435 So.2d 69 (1983)
Don L. THRASH
v.
Anita Y. Freeman DEASON.
Don L. THRASH
v.
W.A. FREEMAN, Jr.
Don L. THRASH
v.
W.A. FREEMAN.
82-73, 82-74 and 82-75.
Supreme Court of Alabama.
July 15, 1983.
C. Stephen Trimmier of Trimmier & Pate, Birmingham, for appellant.
James R. Bowles, Tallassee, for appellees.
JONES, Justice.
These cases involve basic contract law issues relating to a promisee's oral release of debt that arose from the sale of stock in an automobile dealership. Plaintiffs, as promisees, sued on promissory notes executed by Defendant. The trial court, finding insufficient evidence of consideration to support the oral release, granted Plaintiffs' summary judgment motions. Defendant appeals, contending the trial court erred by not applying appropriate contract law principles. We reverse and remand.
*70 In January 1977, Plaintiff W.A. Freeman incorporated his Ford dealership in Tallassee, Alabama, which was thereafter known as Freeman Ford, Inc. One hundred shares of stock were issued, and, of this number, W.A. Freeman owned sixty shares, W.A. Freeman, Jr., owned twenty shares, and Anita Y. Freeman Deason owned twenty shares.
In late 1977, Defendant Don L. Thrash, in conjunction with Steve L. Walters, purchased all of the corporate stock in the dealership and leased the business premises. In addition to a substantial cash down payment, Thrash and Walters jointly executed promissory notes payable to each of the Plaintiffs, the original stockholders. These notes form the basis of the three separate lawsuits which have been consolidated on appeal. The parties stipulated that W.A. Freeman acted at all times for and on behalf of the other Plaintiffs/promisees, who had no contact with Thrash or Walters. Because the issues on appeal are identical as to each Plaintiff, W.A. Freeman will be referred to as Freeman or Plaintiff.
After the purchase, Thrash and Walters operated the dealership for approximately two years until Walters's sister divorced Thrash and it was decided that one owner should purchase the interest of the other. On November 9, 1979, Thrash and Walters drafted a memorandum setting forth a proposed sale of Thrash's stock to Walters. When the memo was prepared between Walters and Thrash, they discussed contacting Freeman about the matter. The agreement, according to evidence appearing of record, was "conditioned on Mr. Freeman's approving it" and "conditioned on Mr. Freeman's acceptance."
As Thrash and Walters were walking toward the showroom floor in the dealership, following preparation of the memo regarding the sale, they met Freeman. Thrash and Walters then told Freeman that Walters had agreed to buy Thrash's stock, and that Walters now would be responsible for the note payment. Thrash told Freeman that Freeman should look to Walters for his money. Freeman responded by congratulating Walters, and stating "that was fine."
Prior to the closing of the sale from Thrash to Walters, Walters and Freeman discussed the transaction. Freeman then contacted the Bank of Tallassee, where Freeman had pledged the stock as collateral on a personal loan, and arranged to have the stock transferred. Thrash and Walters closed the sale in December 1979, after which time Thrash had no further contact with the dealership.
In April 1980, the dealership began suffering from financial difficulties. Walters discussed these difficulties with Freeman and told Freeman that he could not make the payment on the first of May as scheduled. According to Walters, Freeman agreed to work something out concerning payment. Although discussions with Freeman continued into May after payment was due, Walters made no further payment on the notes. Walters closed the business and filed for bankruptcy. Because Walters's bankruptcy released him from the promissory note obligations, he is not a party to these proceedings.
The parties agree that Code 1975, § 8-1-23, controls the disposition of this case. This statute states:
"An obligation is extinguished by a release therefrom given to the debtor by the creditor upon a new consideration or in writing with or without new consideration."
The trial court based the directed verdicts on the finding that no validating consideration existed, because the transaction between Thrash and Walters had not benefited any of the Plaintiffs. The question we face, simply stated, is whether any evidence of new consideration existed, thereby raising a jury question.
The parties also agree that legal detriment to a promisor, and benefit to a promisee, constitutes sufficient consideration to support an oral release of the maker of a note. Carpenter v. Murphree & Jones, 49 Ala. 84 (1873). Neither party contends consideration moved from Thrash to Freeman. Our focus of inquiry, then, centers *71 upon whether evidence existed showing Thrash sustained a legal detriment constituting consideration, and, if so, whether, as a matter of law, such consideration remains valid when it does not move to the promisee (Freeman), but to a third party (Walters).
Freeman contends Thrash suffered no legal detriment because Freeman did not request Thrash to sell out to Walters; rather, Walters and Thrash made their decision prior to the discussion with Freeman at the dealership. Thus, he says, no "meeting of the minds" occurred because Freeman did not intend for the sale to occur, but merely acquiesced in order to be courteous. In addition, Freeman contends Thrash suffered no legal detriment because "Thrash was paid by Walters a fair price for his interest in the business."
We think the well-settled law in Alabama, relating to valid consideration for releases, comports with the general statement appearing in 76 C.J.S. Release, § 12 (1952):
"Consideration as relating to releases may consist of some detriment to the releasee or some benefit to the releasor, moving from the releasee or some one in his behalf, but nothing can be treated as consideration that was not intended as such by the parties.
". . . .
"A consideration for a release moving from a third person on behalf of the releasee to the releasor or from the releasee to a third person at the request or by the acquiescence of the releasor is as adequate as a consideration moving directly from the releasee to the releasor." (Emphasis added.)
See Word v. Smith, 394 So.2d 12 (Ala.1981); Willingham v. Lankford, 257 Ala. 595, 60 So.2d 387 (1952); Baumhauer v. McGill, 15 Ala.App., 433, 73 So. 753 (1917).
Freeman's argument that, as a matter of law, no consideration existed because Thrash received a fair price has no merit. The promisee's lawful act of doing something which he is not otherwise compelled to do is sufficient consideration to support the agreement of the promissor. Roberts v. Lindsey, 242 Ala. 522, 7 So.2d 82 (1942). Here, the sale to Walters raises a factual issue as to this requirement. Legal detriment certainly does not equate with making a bad deal; otherwise, no fair deal would be supported by consideration because "detriment" does not exist in such a situation.
Because we find sufficient evidence to raise jury questions relating to the release and consideration issues, we need not address Appellant's other arguments in support of reversal. The judgment appealed from is due to be, and hereby is, reversed and the cause is remanded.
REVERSED AND REMANDED.
MADDOX, SHORES and BEATTY, JJ., concur.
TORBERT, C.J., concurs specially.
TORBERT, Chief Justice (concurring specially).
I agree with the principles of law respecting a release enunciated in the opinion of Mr. Justice Jones. Because of this Court's general policy that summary judgment is not appropriate where there is any evidence, however weak, supporting the non-moving party, I am compelled to concur.
Whether the impromptu oral statement of Freeman, when told of the sales transaction, to the effect that "that was fine," constituted a release under Code 1975, § 8-1-23, is extremely doubtful. Moreover, the detriment element necessary to prove "new consideration" may indeed be difficult to establish. I do not understand the principal opinion in this case to mean that the consideration moving from Walters to Thrash, representing the sales price paid to Thrash for his interest in the business, necessarily constitutes the "new consideration" referred to in § 8-1-23.