896 So.2d 538 (2004)
The BIRMINGHAM PAIN CENTER, INC.
v.
David W. COSGROVE.
2030003.
Court of Civil Appeals of Alabama.
June 25, 2004.
Certiorari Denied September 17, 2004
*539 Susan S. Wagner of Christopher C. Haug of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Birmingham, for appellant.
Stephen J. Bumgarner and Scott A. Boykin of Burr & Forman, LLP, Birmingham, for appellee.
Alabama Supreme Court 1031544.
MURDOCK, Judge.
On April 26, 2002, the trial court entered a final judgment on a jury verdict against the defendant, The Birmingham Pain Center, Inc. ("BPC"), awarding the plaintiff, David W. Cosgrove, damages in the amount of $150,000. On July 18, 2002, following the trial court's denial of BPC's postjudgment motion, BPC appealed the judgment to the Supreme Court of Alabama. BPC did not, however, post a supersedeas *540 bond in connection with that appeal.
On June 28, 2002, Cosgrove filed in the trial court a garnishment proceeding against AmSouth Bank in an effort to enforce the judgment against BPC. A writ of garnishment was issued, and, as a result, on July 31, 2002, while the appeal was pending, $150,276 was deposited into the trial court on behalf of BPC. On August 23, 2002, Cosgrove filed a motion asking the trial court to order the investment of those funds in an interest-bearing account; the trial court granted that motion on August 28, 2002.
On October 24, 2002, BPC filed a "Motion for Determination of Judgment Amount and Entry of Satisfaction of Judgment." With this motion, BPC tendered to the trial court $4,735.03, representing the postjudgment interest that was due through October 24, 2002, but which had not been paid by the funds that had been garnished and the interest earned on those funds. In that motion, BPC contended that it had paid the amounts due under the judgment, plus postjudgment interest due through the date of the motion, and that it should not be held responsible for the accrual of any additional postjudgment interest. On November 4, 2002, the trial court denied BPC's October 24, 2002, motion as "premature." The additional $4,735.03 tendered by BPC was not accepted by the trial court.
On May 23, 2003, our Supreme Court, without issuing an opinion, affirmed the trial court's April 26, 2002, judgment. See Birmingham Pain Center, Inc. v. Cosgrove (No. 1012012, May 23, 2003), 883 So.2d 271 (Ala.2003) (table). The Supreme Court entered its certificate of judgment on June 10, 2003. Several days later, on June 13, 2003, Cosgrove filed a motion in the trial court seeking the distribution of the funds held in the trial court. The trial court entered an order on June 20, 2003, in which it ordered the funds, including the interest that had accrued on the original judgment amount, to be distributed to Cosgrove. In that June 20, 2003, order, the trial court specifically stated that it had made no determination on the issue of whether the judgment had been satisfied.
On June 31, 2003, BPC renewed its motion seeking to have the April 26, 2002, judgment deemed satisfied as of October 24, 2002. In that motion, BPC argued that the amount that had been deposited into the trial court (along with the interest earned thereon) plus the $4,735.03 tendered to the trial court on October 24, 2002, equaled the total principal amount of the judgment and all interest due thereon as of that date pursuant to § 8-8-10, Ala.Code 1975, and that, subject to its retender of the $4,735.03, BPC was not liable for any more interest under that statute. On August 18, 2003, the trial court entered an order denying that motion and determining that BPC owed Cosgrove an additional $18,266.87 in postjudgment interest. BPC appealed.
On appeal, BPC repeats the argument it made to the trial court, i.e., it takes the position that the judgment against it should be deemed to have been satisfied on October 24, 2002. Accordingly, BPC contends that the trial court erred in its August 18, 2003, order in requiring BPC to pay Cosgrove any additional postjudgment interest.
Rule 37, Ala. R.App. P., provides:
"Unless otherwise provided by law, if a judgment for money in a civil case is affirmed or the appeal is dismissed, whatever interest is provided by law shall be payable from the date the judgment was entered in the trial court. If a judgment is modified or reversed with a direction that a judgment for money be entered in the trial court, the certificate *541 of judgment shall contain instructions with respect to allowance of interest."
Judgments such as the one at issue in this case are subject to a statutory interest rate of 12%. § 8-8-10, Ala.Code 1975. "Section 8-8-10 authorizes the payment of post-judgment interest as compensation for the loss of use of money as a result of the nonpayment of a liquidated sum for which liability has already been determined." Elmore County Comm'n v. Ragona, 561 So.2d 1092, 1093 (Ala.1990) ("Ragona II") (emphasis added). Interest continues to accrue on any final judgment or any portion thereof that remains unsatisfied, including any judgment that is affirmed on appeal, until the same is satisfied. Schulte v. Smith, 708 So.2d 138 (Ala.1997). Partial payments on a liability for a judgment are credited first to accrued interest and then to any remaining principal. § 8-8-11, Ala.Code 1975; Schulte, 708 So.2d at 141.
In Elmore County Commission v. Ragona, 540 So.2d 720 (Ala.1989) ("Ragona I"), a case relied upon heavily by Cosgrove in his brief to this court, a jury awarded the plaintiff, Ragona, $136,750 on her claim against all of the defendants; the trial court entered a judgment on that verdict on October 16, 1986. Our Supreme Court affirmed the judgment, but it concluded, in pertinent part, that "the verdict and judgment will support a recovery by Ms. Ragona against the County defendants only in the amount of $100,000." Ragona I, 540 So.2d at 727. Thereafter, on May 17, 1989, the County defendants paid $100,000 into the trial court and filed a document specifying that the $100,000 paid into the court was a "`full satisfaction of the judgment rendered against them.'" Ragona II, 561 So.2d at 1098. Ragona moved to have the funds released to her and to have postjudgment interest awarded pursuant to § 8-8-10. On June 27, 1989, the trial court released the $100,000 to Ragona and awarded her postjudgment interest that had accrued up to that date; that postjudgment interest totaled $32,317.81. In calculating the amount of postjudgment interest due, the trial court computed interest from the October 16, 1986, judgment through June 27, 1989, the date on which it released the $100,000 to Ragona. Ragona II, 561 So.2d at 1098.
On appeal, the County defendants argued that the trial court erred in computing postjudgment interest. The Supreme Court affirmed the judgment of the trial court, however, holding that postjudgment interest began to accrue from the date of the judgment that established the County defendants' liability, i.e., October 16, 1986, and that the $100,000 paid into the trial court could not be deemed to have satisfied at least part of the judgment because of the condition the County defendants had placed on Ragona's acceptance of those funds. The Supreme Court explained:
"Interest runs on a judgment until the judgment is paid. § 8-8-10; Hunt v. Ward, 262 Ala. 379, 79 So.2d 20 (1955). The payment of money into the court is a proper means of satisfying a judgment. In the present case, however, the County, by paying the $100,000 into the court as full satisfaction of the judgment, sought to satisfy not only Ms. Ragona's claim that had been liquidated by the judgment (i.e., $100,000), but also her unliquidated claim for post-judgment interest. Had Ms. Ragona accepted the $100,000, an accord and satisfaction would have resulted and the interest would not have been recoverable. See O'Neal v. O'Neal, 284 Ala. 661, 227 So.2d 430 (1969); Boohaker v. Trott, 274 Ala. 12, 145 So.2d 179 (1962); see, also, 1 Am.Jur.2d Accord and Satisfaction, §§ 6, 21 (1962). Even though the $100,000 was paid by the County into the court, the condition that was attached to its acceptance placed it out of the reach of Ms. Ragona, until the *542 trial court ordered its release on June 27, 1989."
Ragona II, 561 So.2d at 1098. See generally Rule 67, Ala. R. Civ. P.; Committee Comments on 1973 Adoption of Rule 67 (noting that among the "principal reasons" for depositing money with the court pursuant to Rule 67 is "to stop the further accrual of interest").
Thus, in Ragona II, although the defendants paid money damages into court, the availability of those funds for use by the plaintiff was accompanied by a condition that was not included in the judgment purportedly being satisfied. Specifically, the obligation of the defendant to pay postjudgment interest was implicitly (indeed, by law) a part of the trial court's final judgment in that case; yet, the defendants attempted to condition the plaintiff's access to and use of the $100,000 payment it made ($100,000 being the full, principle amount of the trial court's judgment in that case) on being relieved of any obligation to pay postjudgment interest on that amount. Accordingly, Ragona II is not a case in which the payment of moneys into court made those moneys available to the plaintiff (i.e., brought an end to the plaintiff's "loss of use" of those moneys) free of any condition not imposed by the judgment itself. The present case, however, is such a case. The garnished funds were deposited into court unaccompanied by any effort to condition Cosgrove's access to those funds on a waiver by Cosgrove of his right to postjudgment interest that would otherwise accrue after the date of that deposit, and neither that deposit nor BPC's subsequent tender of $4,735.03 was accompanied by any effort on the part of BPC to impose on Cosgrove some condition to his access to and use of those funds not found in the trial court's judgment. See, e.g., Pinkstaff v. Pennsylvania R.R., 31 Ill.2d 518, 202 N.E.2d 512 (1964).
Cosgrove argues, however, that, even after moneys owed to him under the trial court's judgment were deposited into or tendered to the court, BPC persisted in prosecuting its appeal of the judgment and in contesting its liability for those damages. This, according to Cosgrove, prevented the deposit and tender of those moneys from constituting a satisfaction, or partial satisfaction, that would stop the accrual of interest under § 8-8-10 on the entire judgment. The focus of this argument is whether BPC conceded its liability. It is premised on the notion that a defendant cannot wholly or partially "satisfy" a judgment if it is unwilling to concede the validity of that judgment by ceasing any prosecution of an appeal thereof. That premise is faulty and misunderstands the relationship between judgments, satisfaction of judgments, and appeals from judgments.
The fact that a defendant continues to prosecute its appeal of the judgment against it does not mean that, during the pendency of that appeal, the defendant cannot satisfy that judgment.
"A party need not obtain a stay of judgment, nor file a supersedeas bond, in order to take or prosecute an appeal. Failure to file such a bond is not grounds for dismissal of an appeal, but simply removes the supersedeas aspect of the appeal and leaves the party who obtained the judgment free to execute on the judgment."
5 Am.Jur.2d Appellate Review § 442 (1995) (footnotes omitted). See, e.g., Baker v. Bennett, 660 So.2d 980 (Ala.1995); Ex parte Dekle, 278 Ala. 307, 178 So.2d 85 (1965); Estate of Mollett, 749 So.2d 466 (Ala.Civ.App.1999).
Our holding in this regard is consistent with the holdings of courts in other states, including, for example, New York. We find noteworthy, for purposes of the present *543 case, the following statement of the law in that state:
"The holder of the judgment may be estopped by equitable considerations, or by his own acts, from enforcing the interest which the statute gives him. But the cases which lay down this rule rest on principles of estoppel which are closely prescribed in scope....
"One is by a tender from the judgment debtor which does not result in a satisfaction of the judgment because the judgment creditor refuses it; the other is the payment of a special deposit into court, recourse to which is absolute on the occurrence of a condition and which may be treated in the nature of a satisfaction."
Feldman v. Brodsky, 12 A.D.2d 347, 350, 211 N.Y.S.2d 56, 59 (1961). See generally Meiselman v. Allstate Insurance Co., 197 A.D.2d 561, 561, 602 N.Y.S.2d 659, 660 (1993) (holding, albeit not in the context of an appeal by the judgment debtor, that an "unconditional tender of the judgment amount stopped the running of postjudgment interest"); Michaels v. United States Tennis Ass'n, Inc., 295 A.D.2d 222, 744 N.Y.S.2d 375 (2002) (holding, although again not in the context of an appeal by the judgment debtor of the underlying judgment, that, because a defendant's tender of the judgment amount was not unconditional in that it required a discussion of "the terms of such payment," that tender did not constitute a satisfaction of the judgment).
As the Texas Supreme Court recently noted:
"Post-judgment interest is not a punishment inflicted on a judgment debtor for exercising the right to appeal. Instead, like pre-judgment interest, post-judgment interest is simply compensation for a judgment creditor's lost opportunity to invest the money awarded as damages at trial. When a judgment creditor has received an unconditional tender of the money awarded, and may invest it as he chooses, there is no need for the continuing accrual of post-judgment interest. This is true whether or not an appeal of the underlying judgment is ongoing."
Miga v. Jensen, 96 S.W.3d 207, 212 (Tex.2002) (footnotes omitted). Furthermore, as the Supreme Court of South Carolina has explained, the rule that further accrual of interest is prevented by a judgment debtor's deposit of funds into court pending its appeal "encourages the debtor to pay the judgment and assures the judgment creditor the funds will be available at the conclusion of the appeal." Russo v. Sutton, 317 S.C. 441, 444, 454 S.E.2d 895, 896 (1995). See also McGuire v. Sifers, 235 Kan. 368, 681 P.2d 1025 (1984); Pinkstaff v. Pennsylvania R.R., supra.
The case upon which the dissent primarily relies, Life Insurance Co. of Georgia v. Johnson, 725 So.2d 934 (Ala.1998), is one that, on its facts, has no application to the present case. In the present case, the appellant paid in full, and thereby satisfied a judgment for, money damages that it contests on appeal. In Life Insurance Co. of Georgia, however, the money damages which the appellant paid were damages that it did not contest on appeal. (The portion of the money damages the appellant did contest on appeal, on the other hand, were not paid by the appellant pending that appeal.) Thus, Life Insurance Co. of Georgia addresses only the ability of an appellant to stop the accrual of interest on that portion of a judgment as to which it does not appeal. Life Insurance Co. of Georgia does not reach the issue we confront in the present case, i.e., whether the appellant, by making full payment of that portion of a judgment that it does appeal, can stop the running of interest thereon.
*544 The dissent emphasizes the following excerpts from our Supreme Court's decision in Life Insurance Co. of Georgia:
"`[I]f an appellant has no complaint with a part of a judgment for money damages, he remains free to satisfy that part by paying [it].... Thus, any appellant has means at his disposal to prevent the accrual of interest on that portion of a money judgment about which he does not claim error on appeal.'
"Bassett v. Eagle Telecommunications, Inc., 750 P.2d 73, 77 (Colo.App.1987).
"We see no reason why a defendant who concedes his liability as to a portion of a judgment should not be able to make payments toward satisfying, and halting the accrual of interest upon, that part while his appeal of another part of the judgment is pending."
725 So.2d at 941-42. In essence, the dissent construes the statement quoted from Bassett v. Eagle Telecommunications, Inc., namely, that "if an appellant has no complaint with a part of a judgment for money damages, he remains free to satisfy that part by paying [it]," as implying that an appellant who does contest a part of a judgment for money damages is not"free to satisfy that part." In so doing, the dissent reads more into our Supreme Court's analysis than we believe was intended.[1] Our Supreme Court in Life Insurance Co. of Georgia refers only to an appellant's ability, through the making of a payment, to stop the accrual of interest on that portion of a judgment for money damages from which no appeal is taken merely because that was the extent of the issue before it; unlike the present case, the appellant in Life Insurance Co. of Georgia had not paid that portion of the judgment as to which an appeal was taken and, accordingly, did not even raise the issue whether such a payment would have stopped the accrual of interest.
The dissent closes by relying upon the following passage from Life Insurance Co. of Georgia:
"`Postjudgment interest is ... "just compensation to ensure that a money judgment will be worth the same when it is actually received as when it was awarded." ... The State has interests in ensuring that valid judgments are paid promptly and that a punishment assessed against a civil defendant is not diluted by inflation and the passage of time. We recognize that a defendant who appeals a damages award ... is in somewhat of a difficult position.... However, it must also be recalled that the plaintiff is not at fault for the delay in receiving payment and that it is she who has secured a judgment for the payment of money as the result of the defendants' wrongdoing.'"
*545 ___ So.2d at ___ (quoting Life Insurance Co. of Georgia, 725 So.2d at 943). This quotation, however, was part of the Supreme Court's justification for its holdings that interest continues to accrue throughout the pendency of an appeal on that portion of the money damages that remain unpaid and that ultimately are affirmed on appeal and, in particular, that the accrual of that interest from the date of the original judgment is not "impermissibly punitive and violat[ive of] the Due Process Clause of the Fourteenth Amendment." Life Insurance Co. of Georgia, 725 So.2d at 942. Again, this passage from Life Insurance Co. of Georgia does not address the situation presented in the present case, where a payment is made before or during the pendency of an appeal to satisfy that portion of a judgment that is the subject of the appeal.
The dispositive issue as to whether BPC satisfied or partially satisfied the judgment against it at any time is not whether BPC conceded liability or continued to prosecute its appeal beyond the date of the purported satisfaction or partial satisfaction; rather, it is whether moneys owed by BPC to Cosgrove under the judgment were made available to Cosgrove without any restriction or condition not found in the judgment itself. To the extent such moneys were made available to Cosgrove without restriction, the "loss of use" of those moneys by Cosgrove came to an end, interest under § 8-8-10 therefore stopped accruing, and the judgment was satisfied. The fact that in the present case BPC continued to prosecute its appeal meant only that, had its appeal been successful, BPC would have been entitled to seek the repayment of the money damages that it had paid. In other words, if BPC had prevailed in its appeal, it simply would have found itself in the position of having run the risk of whether it could and would get reimbursed by Cosgrove, rather than having chosen to file a supersedeas bond and avoid that risk.[2]
In light of the foregoing, we conclude that the trial court erred in its August 18, 2003, judgment in requiring BPC to pay any additional postjudgment interest. The judgment against BPC should be deemed satisfied as of October 24, 2002, subject to the retender by BPC of the $4,735.03, which the trial court refused to accept on that date. The trial court's August 18, 2003, judgment is therefore reversed, and the cause is remanded for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY and PITTMAN, JJ., concur.
THOMPSON, J., dissents, with writing, which YATES, P.J., joins.
THOMPSON, Judge, dissenting.
I conclude that the trial court properly calculated postjudgment interest in this case; therefore, I must dissent.
In Elmore County Commission v. Ragona, 561 So.2d 1092 (Ala.1990), our supreme court concluded that because the condition placed on Ragona's acceptance of the funds paid by the defendants placed the funds out of Ragona's reach, the amount paid into the court could not be said to have satisfied the judgment. As discussed below, I conclude that in this case the *546 funds paid into the court on BPC's behalf or by BPC were similarly out of the reach of Cosgrove.
In Schulte v. Smith, 708 So.2d 138 (Ala.1997), our supreme court held that postjudgment interest was due on the amount of the judgment as remitted but that the postjudgment interest began to accrue as of the date of the original judgment. In that case, the defendants had made two payments toward their total liability; one of those payments was made while the matter was on appeal, and our supreme court denied the plaintiffs' motion to have those funds released to him. The court noted that on application for rehearing the plaintiff-appellant argued that postjudgment interest should have been deemed to accrue on the payment that was made while the matter was first on appeal because he had been unable to "unconditionally exercise control over the funds" until the disposition of the appeal. Schulte v. Smith, 708 So.2d at 141 n. 2. Our supreme court declined to address that issue, however, because it was impermissibly raised for the first time on application for rehearing. Id.
A more recent opinion, cited by Cosgrove throughout his brief in defense of the trial court's judgment, also discusses an award of postjudgment interest and provides precedent under which I conclude the trial court's judgment is due to be affirmed. See Life Ins. Co. of Georgia v. Johnson, 725 So.2d 934 (Ala.1998) (hereinafter "Johnson III"). In that case, the trial court entered on June 2, 1994, a judgment on the jury's verdict awarding Johnson $250,000 in compensatory damages and $15 million in punitive damages. The parties agreed to suspend the accrual of postjudgment interest for 30 days, i.e., until July 2, 1994. The trial court later remitted the punitive-damages award to $12.5 million. Our supreme court affirmed the judgment on the condition that Johnson accept a remittitur of the punitive-damages award to $5 million. Life Ins. Co. of Georgia v. Johnson, 684 So.2d 685 (Ala.1996) ("Johnson I"). The United States Supreme Court remanded the case to our supreme court for reconsideration of the punitive-damages award. Life Ins. Co. of Georgia v. Johnson, 519 U.S. 923, 117 S.Ct. 288, 136 L.Ed.2d 207 (1996). Our supreme court then affirmed the judgment on the condition that Johnson accept $3 million as punitive damages. Life Ins. Co. of Georgia v. Johnson, 701 So.2d 524 (Ala.1997) ("Johnson II"). On August 20, 1997, Johnson accepted the remittitur. On June 18, 1996, after the court's holding in Johnson I, Life of Georgia paid into the trial court $306,142.60 in satisfaction of the compensatory-damages award; that amount represented the $250,000 damages award plus postjudgment interest that had accrued up to that date. Johnson accepted the money without objecting and without indicating that the money was in partial satisfaction of the judgment. After the release of Johnson II, on August 21, 1997, Life of Georgia paid into the trial court $3 million, plus a separate check for $986.30, which it contended was the postjudgment interest due on the punitive-damages award; that amount represented postjudgment interest for the one-day period between the date of Johnson's August 20, 1997, acceptance of the remittitur and its August 21, 1997, payment.
A dispute arose between the parties regarding the proper amount of postjudgment interest due. Johnson argued that the $306,142.60 payment made on June 18, 1996, should be credited as a payment of interest, and that postjudgment interest should be calculated, from the date of the original judgment, on the remainder of the entire $3.25 million award. The trial court agreed with Johnson and entered a judgment accordingly. Johnson III, supra.
*547 Our supreme court held, among other things, that postjudgment interest on the punitive-damages award began to accrue on July 2, 1994 (the agreed-upon 30th day after the entry of the original judgment), because although the effect of the appellate courts' holdings was to modify the amount of the punitive-damages award, those holdings did not affect Life of Georgia's liability for punitive damages. Johnson III, supra. In so holding, the court stated:
"[T]his Court has held that when an appellate court affirms a money judgment but alters the amount due, the total sum so fixed bears interest from the date of the trial court's judgment, even without an express provision to that effect, because that is the `legal effect' of the affirmance. Thus, subsequent action by an appellate court in reducing a judgment does not prevent interest from attaching upon the reduced amount and running from the date of the original judgment."
Johnson III, 725 So.2d at 939.
Also in Johnson III, supra, our supreme court reversed that part of the trial court's judgment that found that the June 18, 1996, payment was not a satisfaction of the compensatory-damages portion of the original, June 2, 1994, judgment. In doing so, the court resolved the issue it had declined to address in Schulte v. Smith, supra. The court noted that the evidence indicated that the parties intended the June 18, 1996, payment to satisfy the compensatory-damages portion of the judgment. The supreme court determined that because Life of Georgia had conceded liability for the compensatory-damages portion of the June 2, 1994, judgment, Life of Georgia should be allowed to pay that part of the judgment and to prevent the accrual of additional postjudgment interest on that part of the judgment for which it conceded its liability. Johnson III, 725 So.2d at 942. In so holding, the court stated:
"Whether Life of Georgia's payment on June 18, 1996, was to be applied to interest and principal as to the compensatory damages portion of the award or to the interest that had accrued on the entire judgment award raises what appear to be questions of first impression in Alabama. However, it has elsewhere been recognized:
"`[I]f an appellant has no complaint with a part of a judgment for money damages, he remains free to satisfy that part by paying [it].... Thus, any appellant has means at his disposal to prevent the accrual of interest on that portion of a money judgment about which he does not claim error on appeal.'
"Bassett v. Eagle Telecommunications, Inc., 750 P.2d 73, 77 (Colo.App.1987).
"We see no reason why a defendant who concedes his liability as to a portion of a judgment should not be able to make payments toward satisfying, and halting the accrual of interest upon, that part while his appeal of another part of the judgment is pending."
Johnson III, 725 So.2d at 941-42 (emphasis added).
I believe that the precedent of Johnson III is dispositive of this case. The main opinion cites no authority for its holding that the accrual of postjudgment interest is tolled if funds are paid into the court and are (purportedly) available to the party who prevailed at trial, as long as that party's access to the funds is not accompanied by a condition that does not arise from the judgment itself. Even assuming, however, that that holding is a valid statement of Alabama law, I believe that the application of that holding to the facts of this case supports affirming the trial court's judgment.
In this case, the funds were paid into the trial court by the garnishee, not by BPC. *548 That fact is significant because the garnishee paid the funds into the trial court in order to discharge its responsibility under the garnishment order, not in an effort to satisfy BPC's liability under the April 26, 2002, judgment. Further, at the time BPC moved the trial court to have the judgment declared satisfied, BPC was still prosecuting its appeal from the April 26, 2002, judgment in our supreme court. I agree with the main opinion that BPC, in moving for an order declaring the judgment satisfied, placed no express condition on Cosgrove's acceptance of the $150,276 deposited into the court by the garnishee. However, I must conclude that BPC implied a condition on Cosgrove's receipt of the funds deposited into the trial court  namely, it did so by impliedly stating that Cosgrove would receive the $150,276 subject to the condition that he would have to repay the funds is BPC prevailed on appeal. BPC did not concede its liability for damages under the April 26, 2002, judgment until the release of the supreme court's judgment in Birmingham Pain Center, Inc. v. Cosgrove (No. 1012012, May 23, 2003), 883 So.2d 271 (Ala.2003) (table).
Had BPC prevailed in its appeal, under the main opinion's holding, BPC would, in all likelihood, have asserted a claim against Cosgrove for the return of the funds. In that event, would the main opinion impose on Cosgrove (the party who prevailed at trial but lost on appeal) the obligation to pay BPC interest on the use of the money paid or deposited on BPC's behalf? I believe that the result imposed by the main opinion shifts the risk and a potential burden on the party that prevailed at the trial court.
In Johnson III, supra, our supreme court held that because Life of Georgia had conceded its liability as to the compensatory-damages portion of the judgment and had paid funds to satisfy that portion of the judgment, the accrual of postjudgment interest on that portion of the judgment had ceased, even during the time in which Life of Georgia was prosecuting its appeal of another portion of the judgment. Thus, in that case, because Life of Georgia's liability under the compensatory-damages portion of the judgment was no longer contested, the plaintiff had available to her the amount due under the compensatory-damages portion of the judgment in her favor. There was no possibility that the plaintiff would have to return or repay the funds representing compensatory damages. The main opinion concludes that Cosgrove similarly had the proceeds of the April 26, 2002, judgment available to him. However, I cannot agree that those funds were truly available to Cosgrove because BPC was still, as it prosecuted its appeal, contesting its liability for those damages. Given the holding of Johnson III, I would hold that BPC could not both prosecute an appeal in which it contended it was not liable for damages under the April 26, 2002, judgment and at the same time be entitled to halt the accrual of postjudgment interest by paying into the trial court, or having another entity pay on its behalf pursuant to a garnishment order, amounts toward a judgment for which it contested its liability.
The main opinion did not address BPC's argument that the trial court's judgment punishes it for exercising its right to appeal and that it lost the use of the funds paid pursuant to the garnishment order. Our supreme court rejected a similar argument in Johnson III, supra, and, in doing so, stated:
"Postjudgment interest is ... `just compensation to ensure that a money judgment will be worth the same when it is actually received as when it was awarded.' ... The State has interests in ensuring that valid judgments are paid promptly and that a punishment assessed against a civil defendant is not *549 diluted by inflation and the passage of time. We recognize that a defendant who appeals a damages award ... is in somewhat of a difficult position.... However, it must also be recalled that the plaintiff is not at fault for the delay in receiving payment and that it is she who has secured a judgment for the payment of money as the result of the defendants' wrongdoing."
Johnson III, 725 So.2d at 943. Given the foregoing, I would reject BPC's argument that the trial court's judgment is punitive. I would affirm the trial court's judgment.
YATES, P.J., concurs.
NOTES
[1] Such a construction also would be in tension with subsequent Colorado cases, at least one of which cites Bassett, explaining that payment of condemnation awards into court terminates the accrual of postjudgment interest:

"If a judgment for money in a civil case is appealed by a judgment debtor and the judgment is affirmed, interest is payable from the date of entry of judgment until the judgment is satisfied. Such interest is to be compounded annually. Section 5-12-106(1)(a), C.R.S.1999.
"However, a payment into the court registry constitutes a partial satisfaction of the judgment for the amount tendered and terminates the accrual of interest on that amount. Bassett v. Eagle Telecommunications, Inc., 750 P.2d 73 (Colo.App.1987); Indian Mountain Metropolitan Recreation & Park District v. JP Campbell & Associates, 921 P.2d 65 (Colo.App.1996) (plaintiff could have avoided accrual of interest during period of defendant's appeal had it deposited amount of judgment into court registry)."
E-470 Pub. Highway Auth. v. 455 Co., 997 P.2d 1273, 1277 (Colo.Ct.App.1999).
[2] The dissent also asks whether, if BPC had prevailed in its appeal and had sought the repayment by Cosgrove of the funds deposited into court, would Cosgrove be responsible to BPC for interest on that money. We see no statutory authority for such a responsibility; however, that question is not before us. What the statute would require, if construed in the manner urged by the dissent, is that BPC be responsible to Cosgrove for interest at the rate of 12% per annum on moneys that had been deposited into court for Cosgrove's use and over which BPC no longer had control.