PER CURIAM.
Noble Winstead Yeager appeals from a judgment entered by the Tuscaloosa Circuit Court in favor of the estate of Robert Earl Winstead, Jr., on February 7, 2007, denying her postjudgment interest on a judgment awarding her alimony in gross and attorney fees.
The parties stipulated to the following facts. On April 24, 2001, the Tuscaloosa Circuit Court entered a judgment divorcing Yeager and Robert Earl Winstead, Jr., which stated, in pertinent part:
“As additional property settlement (alimony in gross), [Winstead] shall pay to [Yeager] the sum of THIRTY ONE THOUSAND DOLLARS ($31,000.00), payable, together with accrued interest at the statutory rate of 12%, as follows: (a) $6,000.00 within sixty (60) days from the entry of this judgment; (b) $12,500.00 on or before May 1, 2002, and (c) the balance of $12,500.00 plus all interest accrued since the entry of this judgment!, which] shall be paid on or before May 1, 2003. [Winstead] shall *759 have the right to prepay said amount at any time without penalty.”
Yeager filed a motion to alter, amend, or vacate, and, on July 3, 2001, the circuit court entered an amended judgment awarding Yeager an additional $4,500 as alimony in gross and $2,500 in attorney fees, to be paid within 90 days of the entry of that judgment.
Yeager filed a notice of appeal from the circuit court’s divorce judgment with this court on August 14, 2001, seeking a reversal of the divorce judgment. On August 29, 2001, while that appeal was pending, Winstead tendered three checks to Yeager pursuant to the April 24, 2001, judgment and the July 3, 2001, amended judgment— one in the amount of $31,000, one in the amount of $4,500, and a third in the amount of $2,500. The checks were accompanied by a letter indicating that the checks were being “tendered as payment in full of the presently outstanding obligations under the divorce decree as last modified.”
In a letter to Winstead’s attorney dated August 30, 2001, Yeager’s attorney stated: “Before the checks are negotiated, I request that you confirm to me in wilting that the same would in no way compromise or prejudice any rights [Yeager] has on appeal, specifically an appeal of any of those specified awards.” Winstead’s attorney responded to Yeager’s attorney by a letter dated August 31, 2001, that stated:
“As you know, we tendered the payments required by [the circuit court]’s order. You may negotiate the checks or not as you please. The legal effect of the negotiation is an issue which you and [Yeager] will have to decide for yourselves. However, the checks are being tendered as payment in full of the obligations owed and as required under the court’s orders.”
On September 6, 2001, Yeager’s attorney sent a letter, with the three checks enclosed, to Winstead’s attorney that stated:
“Enclosed please find your client’s three checks which were previously sent to me. I am returning them in light of your August 31, 2001 letter, wherein you decline to confirm to me in writing that the acceptance of these checks would in no way compromise [Yeager’s] appeal. It goes without saying that it is an impossibility for me and/or [Yeager] to negotiate these checks without that assurance.
“Please advise [Winstead] that post-judgment interest at a rate of twelve percent (12%) will be expected at the conclusion of this appeal. If [Winstead] would like to avoid the same, he can simply waive any challenge of the pending appeal based on an ‘acceptance of benefits’ argument, or the like.”
On September 10, 2001, Winstead’s attorney sent the three checks back to Yeager’s attorney with a letter that stated, in part: “[w]hether you accept the money or don’t accept the money is up to you,” “[m]y client has avoided the interest by making this tender and neither [Winstead] or I are obligated to ‘waive any challenge of the pending appeal.’ ” That letter was the last communication between the parties regarding the checks.
In 2002, this court affirmed the divorce judgment, without an opinion. See Winstead v. Winstead, 863 So.2d 1164 (Ala.Civ. App.2002) (table). Winstead died on July 15, 2004. On March 23, 2005, Yeager filed a verified claim in the Tuscaloosa Probate Court against Winstead’s estate in the amount of $38,000,[1] plus postjudgment in *760 terest. On June 13, 2005, Yeager filed a declaratory-judgment action in the circuit court seeking that same relief. The probate court claim was subsequently consolidated with the circuit court action. On February 7, 2007, the circuit court entered a judgment stating, in pertinent part:
“After thoroughly considering the facts and briefs filed, the amount of the claim is hereby fixed and established at $38,000 without accrued interest. Although the uncertainty about the acceptance of the tender of the funds on August 29, 2001 is understandable and the claimant’s arguments are made in good faith, it was the claimant who appealed the judgment of the [circuit] court casting doubt on the certainty or finality of the judgment. The funds were not tendered on the condition that the appeal be dismissed or withdrawn. Although the appeal was a valid exercise of [Yeagerj’s right to challenge a portion of the judgment, the tender of the funds on the portion not under review was sufficient to preclude the imposition of interest that otherwise would attach if the judgment had not been challenged.”
Yeager appealed to the supreme court. The supreme court determined that the appeal was within this court’s jurisdiction and transferred the appeal to this court.
The parties in this case stipulated to the facts to be considered by the circuit court and presented exhibits in support of those stipulations; the court heard no oral testimony. Thus, our review of this case is de novo. Whitehead v. Hester, 512 So.2d 1297,1299 (Ala.1987).
On appeal, Yeager argues that the circuit court erred by failing to award her postjudgment interest for the amounts due her from Winstead. In Wilhite v. Ryan, 66 Ala. 106 (1880), the Alabama Supreme Court stated that “every tender of money, by a debtor to a creditor, must be absolute, and not coupled with conditions.” 66 Ala. at 109. Yeager argues that Winstead’s statement in the letter accompanying the three checks that the checks were being tendered “as payment in full” constituted a condition. We agree. The checks were sent to Yeager pursuant to a judgment as to which an appeal was pending; had this court determined that appeal in Yeager’s favor, it might have resulted in an alteration of the amount due her from Winstead under the divorce judgment. Thus, that judgment was in dispute at the time the checks were issued to Yeager.
“As a general rule, when a check is tendered upon the condition that the creditor accept it in full payment of a disputed claim, there are two options available to the creditor. He may reject the tender or accept the tender with the condition attached. Endorsing and depositing the check is tantamount to accepting the tender with the condition attached. Such acts fulfill the requirements for an accord and satisfaction.”
Bivins v. White Dairy, 378 So.2d 1122, 1124 (Ala.Civ.App.1979). See also Public Nat’l Life Ins. Co. v. Highsmith, 47 Ala. App. 488, 256 So.2d 912 (1971); and Wallace v. Wallace, 909 So.2d 827 (Ala.Civ. App.2005) (wife’s acceptance of check that specified “payment in full” and was accompanied by a letter stating that the check was for the “balance of the property settlement” in the parties’ divorce judgment amounted to an accord and satisfaction of the property settlement).
Because the language used by Win-stead in his letter, that the checks were being sent as “payment in full,” could have affected Yeager’s rights to recover from Winstead if her appeal resulted in a rever *761 sal and a potential increase of the alimony provision in the divorce judgment, we conclude that that language amounted to a condition accompanying the tender of the checks. As a result, Yeager, by protecting her own interests and opting to reject Winstead’s tender, lost her opportunity to invest the money awarded to her in the divorce judgment and, therefore, is entitled to postjudgment interest on the same.
Section 8-8-10, Ala.Code 1975, states that “[jjudgments for the payment of money, other than costs, ... shall bear interest at the rate of 12 percent per annum.” See Neny v. Neny, 989 So.2d 565 (Ala.Civ.App. 2008) (wife entitled to interest at the rate of 12% per annum pursuant to § 8-8-10 on the portion of alimony-in-gross award that remained unpaid since entry of divorce judgment). Rule 37, Ala. R.App. P., provides:
“Unless otherwise provided by law, if a judgment for money in a civil case is affirmed or the appeal is dismissed, whatever interest is provided by law shall be payable from the date the judgment was rendered in the trial court. If a judgment is modified or reversed with a direction that a judgment for money be entered in the trial court, the certificate of judgment shall contain instructions with respect to allowance of interest.”
Thus, Yeager is entitled to postjudgment interest at the rate of 12% per annum accruing from the date of the divorce judgment and the date of the amended judgment, respectively.
Based on the above-stated reasoning, we reverse the circuit court’s February 7, 2007, judgment and remand the cause with instructions that the circuit court enter an order consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, J., concur.
THOMAS, J., concurs in the result, without writing.
BRYAN, J., dissents, with writing, which MOORE, J., joins.

. This amount represents the total of the $31,000 alimony-in-gross award from the trial court's April 24, 2001, judgment, as well as the additional $4,500 alimony-in-gross award *760 and $2,500 attorney-fee award ordered by the court on July 3, 2001.