STUART, Justice.
 

 We granted certiorari review to determine whether the decision of the Court of Civil Appeals holding that Noble Winstead Yeager, the former wife of Robert Earl Winstead, Jr., who is now deceased, was entitled to postjudgment interest on the ordered alimony in gross and the attorney fees awarded her in their final judgment of divorce conflicts with that court’s decision in
 
 Birmingham Pain Center v. Cosgrove,
 
 896 So.2d 538 (Ala.Civ.App.2004). We reverse and remand.
 

 Facts and Procedural History
 

 On April 24, 2001, the Tuscaloosa Circuit Court entered a final judgment of divorce dissolving the bonds of matrimony between Yeager and Winstead. The order divided the assets between them and awarded Yeager the sum of $31,000 as alimony in gross. The judgment states, in pertinent part:
 

 “(15) As additional property settlement (alimony in gross), the Husband shall pay to the Wife the sum of Thirty One Thousand Dollars ($31,000.00), payable, together with accrued interest at the statutory rate of 12%, as follows: (a) $6,000.00 within sixty (60) days from the entry of this judgment; (b) $12,500.00 on or before May 1, 2002; and (c) the balance of $12,500.00 plus all interest accrued since the entry of this judgment shall be paid on or before May 1, 2003.
 
 The Husband shall have the right to prepay said amount at any time without penalty.”
 

 (Emphasis added.)
 

 Yeager moved to alter, amend, or vacate the judgment. The circuit court amended the judgment on July 3, 2001, awarding Yeager additional sums of $4,500 for alimony in gross and $2,500 for reasonable attorney fees. That order states in pertinent part:
 

 “(3) It is hereby ordered that the final decree of divorce previously entered by the Court be modified as follows:
 

 “(A) Paragraph 15 (Alimony in Gross) is modified to add the following provision: ‘Additionally, as compensation for the reasonable rental value of the river property occupied by Husband during the pendency of these proceedings,
 
 the Husband shall pay to the Wife the sum
 
 
 *764
 

 of $4,500.00, which amount shall be paid in full within ninety (90) days from the entry of this order.’
 

 “(B) Paragraph 17 (Attorney Fees) is modified to read as follows:
 
 ‘The Husband shall pay to the Wife the sum of Two Thousand Five Hundred Dollars ($2,500.00) as a reasonable portion of her attorney fees incurred in this matter. Said amount shall be paid in full within ninety (90) days from the entry of this order.’ ”
 

 (Emphasis added.)
 

 Yeager appealed the judgment; Win-stead did not cross-appeal, i.e., Winstead did not challenge the fact that he was obligated to pay Yeager at least the amount specified in the judgment. On August 29, 2001, Winstead tendered three checks to Yeager and her attorney, Laurie Brantley, in the amounts of $31,000, $4,500, and $2,500. In a letter accompanying the checks, Winstead’s counsel stated: “These checks are being tendered as payment in full of the presently outstanding obligations under the divorce decree as last modified.” Yeager’s counsel asked Winstead’s counsel to “confirm ... in writing that [the negotiation of the checks] would in no way compromise or prejudice any rights [Yeager] has on appeal, specifically an appeal of any of those specified awards.” Winstead’s counsel responded in a letter dated August 31, 2001, as follows:
 

 “As you know, we tendered the payments required by Judge Lisenby’s order. You may negotiate the checks or not as you please. The legal effect of the negotiation is an issue which you and [Yeager] will have to decide for yourselves.
 
 However, the checks are being tendered as payment in full of the obligations owed and as required under the court’s order.”
 

 (Emphasis added.) Because Winstead’s counsel would not confirm in writing that the negotiation of the checks would not prejudice Yeager’s rights on appeal, Yeager’s counsel returned the checks to Win-stead’s counsel. In the letter accompanying the returned checks, Yeager’s counsel stated:
 

 “Enclosed please find [Winstead’s] three checks which were previously sent to me. I am returning them in light of your August 31, 2001 letter, wherein you decline to confirm to me in writing that the acceptance of these checks would in no way compromise [Yeager’s] appeal. It goes without saying that it is impossibility [sic] for me and/or my client to negotiate these checks without that assurance.
 

 “Please advise [Winstead] that post-judgment interest at a rate of twelve percent (12%) will be expected at the conclusion of this appeal. If [Winstead] would like to avoid the same, he can simply waive any challenge of the pending appeal based on an ‘acceptance of benefits’ argument, or the like.”
 

 Winstead’s counsel resent the checks to Yeager and her counsel with a letter stating in pertinent part that
 

 “the tender of this money is sufficient to bar any claim for interest postjudgment at the exorbitant twelve percent rate. Therefore, I am tendering these checks to you again. Whether you accept the money or don’t accept the money is up to you; however, the tender is the act which tolls the interest accrual. The original tender was made with our letter of [29], August 2001.”
 

 Yeager and her counsel never negotiated the checks, and the moneys were not inter-pleaded. In 2002, the Court of Civil Appeals affirmed the circuit court’s final judgment of divorce without an opinion.
 
 Winstead v. Winstead,
 
 863 So.2d 1164 (Ala.Civ.App.2002) (table).
 

 
 *765
 
 Winstead died in July 2004. Yeager, who had not negotiated the checks, filed a verified claim in the probate court against Winstead’s estate for the amounts of $31,000, $4,500, and $2,500, plus accrued interest at the statutory rate of 12 percent. She also filed a declaratory-judgment action in the circuit court seeking the same relief she sought against Winstead’s estate under her verified claim filed with the probate court. The claim against Win-stead’s estate in the probate court was consolidated with the declaratory-judgment action in the circuit court.
 

 In February 2007, the circuit court entered a judgment stating:
 

 “After thoroughly considering the facts and briefs filed, the amount of the claim is hereby fixed and established at $38,000 without accrued interest. Although the uncertainty about the acceptance of the tender of the funds on August 29, 2001 is understandable and [Yeager’s] arguments are made in good faith, it was [Yeager] who appealed the judgment of the [circuit] court casting doubt on the certainty or finality of the judgment. The funds were not tendered on the condition that the appeal be dismissed or withdrawn. Although the appeal was a valid exercise of [Yeagerjs right to challenge a portion of the judgment, the tender of the funds on the portion not under review was sufficient to preclude the imposition of interest that otherwise would attach if the judgment had not been challenged.”
 

 Yeager appealed to this Court; however, after initial review we determined that jurisdiction rested in the Court of Civil Appeals and transferred the case to that court.
 

 The Court of Civil Appeals reversed the judgment of the circuit court, stating:
 

 “On appeal, Yeager argues that the circuit court erred by failing to award her postjudgment interest for the amounts due her from Winstead. In
 
 Wilhite v. Ryan,
 
 66 Ala. 106 (1880), the Alabama Supreme Court stated that ‘every tender of money, by a debtor to a creditor, must be absolute, and not coupled with conditions.’ 66 Ala. at 109. Yeager argues that Winstead’s statement in the letter accompanying the three checks that the checks were being tendered ‘as payment in full’ constituted a condition. We agree. The checks were sent to Yeager pursuant to a judgment as to which an appeal was pending; had this court determined that appeal in Yeager’s favor, it might have resulted in an alteration of the amount due her from Winstead under the divorce judgment. Thus, that judgment was in dispute at the time the checks were issued to Yeager.
 

 “ ‘As a general rule when a check is tendered upon the condition that the creditor accept it in full payment of a disputed claim, there are two options available to the creditor. He may reject the tender or accept the tender with the condition attached. Endorsing and depositing the check is tantamount to accepting the tender with the condition attached. Such acts fulfill the requirements for an accord and satisfaction.’
 

 “Bivins v. White Dairy,
 
 378 So.2d 1122, 1124 (Ala.Civ.App.1979).
 
 See also Public Nat’l Life Ins. Co. v. Highsmith,
 
 47 Ala.App. 488, 256 So.2d 912 (1971); and
 
 Wallace v. Wallace,
 
 909 So.2d 827 (Ala. Civ.App.2005) (wife’s acceptance of check that specified ‘payment in full’ and was accompanied by a letter stating that the check was for the ‘balance of the property settlement’ in the parties’ divorce judgment amounted to an accord and satisfaction of the property settlement).
 

 
 *766
 
 “Because the language used by Win-stead in his letter, that the checks were being sent as ‘payment in full,’ could have affected Yeager’s rights to recover from Winstead if her appeal resulted in a reversal and a potential increase of the alimony provision in the divorce judgment, we conclude that that language amounted to a condition accompanying the tender of the checks. As a result, Yeager, by protecting her own interests and opting to reject Winstead’s tender, lost her opportunity to invest the money awarded to her in the divorce judgment and, therefore, is entitled to post-judgment interest on the same.”
 

 Yeager v. Winstead,
 
 41 So.3d 757, 760-61 (Ala.Civ.App.2008).
 

 Judge Bryan, joined by Judge Moore, dissented from main opinion, stating:
 

 “I respectfully dissent. On August 29, 2001, Robert Earl Winstead, Jr., tendered three checks to Noble Winstead Yeager. The checks were accompanied by a letter stating that the checks were ‘being tendered as payment in full
 
 of the presently outstanding obligations under the divorce decree
 
 as last modified.’ (Emphasis added.) The main opinion states that the parties’ divorce ‘judgment was in dispute at the time the checks were issued to Yeager.’ 41 So.3d at 760. However, Yeager did not and does not dispute that the total amount of the three checks tendered to her represented, at that time, the full amount that she was owed under the divorce judgment. By offering Yeager the checks, Winstead simply sought to fulfill his obligation pursuant to the judgment; Win-stead did not offer the checks as a conditional payment of any sort. When a judgment debtor makes moneys available to a judgment creditor without any restriction or condition not found in the judgment itself, the judgment is satisfied and postjudgment interest under § 8-8-10, Ala.Code 1975, stops accruing.
 
 Birmingham Pain Ctr., Inc. v. Cosgrove,
 
 896 So.2d 538, 545 (Ala.Civ.App. 2004). Therefore, in this case, Win-stead’s unconditional tender of the checks stopped the accrual of post-judgment interest.
 

 “The main opinion cites cases concerning the doctrine of accord and satisfaction. However, had Yeager accepted the checks, an accord and satisfaction would not have occurred; rather, Yeager’s acceptance of the checks would have completed a payment of the judgment amount owed her. ‘Payment is a discharge of a debt by a compliance with the terms of the obligation, whereas accord and satisfaction is an agreement, followed by an execution, to discharge a demand by the giving and acceptance of something different from that to which the creditor is entitled.’ 1 Am.Jur.2d
 
 Accord and Satisfaction
 
 § 3 (2005) (footnotes omitted). Moreover, insofar as Yeager’s 2001 appeal of the divorce judgment was based on an argument that the division of the marital estate was inequitable, I note that ‘[wjhere a judgment is appealed on the ground that the damages awarded are inadequate, acceptance of payment of the amount of the judgment, standing alone, does not amount to an accord and satisfaction of the entire claim.’ 1 Am.Jur.2d
 
 Accord and Satisfaction
 
 § 32 (2005) (footnote omitted).
 

 “The circuit court correctly concluded that Winstead’s unconditional tender of the checks stopped the accrual of post-judgment interest. See
 
 Cosgrove,
 
 supra. Accordingly, I would affirm the circuit court’s judgment.”
 

 41 So.3d at 761-62.
 

 Winstead’s estate petitioned this Court for a writ of certiorari to address whether
 
 *767
 
 the Court of Civil Appeals’ decision that Yeager was entitled to postjudgment interest conflicts with that court’s decision in
 
 Birmingham Pain Center.
 

 Standard of Review
 

 “The standard of review on a petition for a writ of certiorari is settled.
 

 “ ‘In reviewing a decision of the Court of Civil Appeals on a petition for a writ of certiorari, this Court “accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals.”
 
 Ex parte Toyota Motor Corp.,
 
 684 So.2d 132, 135 (Ala.1996).’ ”
 

 Ex parte Folsom,
 
 42 So.3d 732, 736 (Ala. 2009) (quoting
 
 Ex parte Exxon Mobil Corp.,
 
 926 So.2d 303, 308 (Ala.2005)). See also
 
 Raley v. Main,
 
 987 So.2d 569, 575 (Ala.2007) (stating that when a trial court’s judgment is based on undisputed facts and documentary evidence, this Court will apply a de novo standard of review);
 
 Alfa Mut. Ins. Co. v. Small,
 
 829 So.2d 743, 745 (Ala.2002) (“Our review of a declaratory judgment is generally governed by the ore tenus standard of review. However, in cases such as this, where there are no disputed facts and where the judgment is based entirely upon documentary evidence, no such presumption of correctness applies; our review is de novo.”).
 

 Analysis
 

 Winstead’s estate contends that the Court of Civil Appeals erred in holding that Winstead’s tender of payment of the amounts ordered in the final judgment of divorce was conditional and, consequently, did not stop the accrual of postjudgment interest.
 

 Section 8-8-10, Ala.Code 1975, provides, in pertinent part:
 

 “Judgments for the payment of money, other than costs, if based upon a contract action, bear interest ... at the same rate of interest as stated in said contract; all other judgments shall bear interest at the rate of 12 percent per annum.... ”
 

 Therefore, from the time a judgment is entered against a party for the payment of money until the time the judgment is satisfied, the judgment shall bear interest.
 

 In
 
 Birmingham Pain Center,
 
 the Court of Civil Appeals considered how a party can satisfy a judgment to stop the accrual of interest. Cosgrove sued Birmingham Pain Center (“BPC”), and a judgment in the amount of $150,000 was entered against BPC. BPC deposited into the trial court the amount of the judgment plus court costs. In ruling that BPC had satisfied the judgment so as to stop the accrual of interest, the Court of Civil Appeals stated:
 

 “The dispositive issue as to whether BPC satisfied or partially satisfied the judgment against it at any time is ...
 
 whether moneys owed by BPC to Cos-grove under the judgment were made available to Cosgrove without any restriction or condition not found in the judgment itself.
 
 To the extent such moneys were made available to Cos-grove without restriction, the ‘loss of use’ of those moneys by Cosgrove came to an end, interest under § 8-8-10 therefore stopped accruing, and the judgment was satisfied.”
 

 896 So.2d at 545. The court held that BPC had satisfied the judgment and that interest stopped accruing when BPC paid the amount of the judgment into the trial court without any conditions because such action by BPC provided Cosgrove with the
 
 *768
 
 opportunity to use and/or invest the moneys awarded at trial.
 

 Winstead’s estate argues that Win-stead’s tendering of the moneys awarded Yeager in the divorce judgment “as payment in full of the presently outstanding obligations under the divorce decree as last modified” provided Yeager with the opportunity to invest the moneys awarded to her and stopped the accrual of interest. Thus, it maintains that Winstead satisfied the requirements of
 
 Birmingham Pain Center.
 
 We agree.
 

 When Winstead tendered the moneys to Yeager, he was voluntarily paying a judgment he did not dispute. By not filing a cross-appeal and challenging the judgment, Winstead indicated that at a minimum he was obligated to pay Yeager $88,000. The statement in the letter accompanying the checks that “[tjhese checks are tendered as payment in full of the presently outstanding obligations under the divorce decree as last modified” did not constitute a condition that could have affected Yeager’s rights to recover from Winstead if her appeal resulted in a reversal. When the phrase “as payment in full” is read in context, it is not a condition warranting application of the principles of “accord and satisfaction” but a phrase indicating compliance with the terms of the “presently outstanding obligations under the divorce decree as last modified.” See
 
 United States v. Hougham,
 
 364 U.S. 310, 312, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960) (“It is a generally accepted rule of law that where a judgment is appealed on the ground that the damages awarded are inadequate, acceptance of payment of the amount of the unsatisfactory judgment does not, standing alone, amount to an accord and satisfaction of the entire claim.”). Indeed, by stating that the tender of the checks was payment under the “presently outstanding obligations,” Winstead recognized that said obligation may change. Because we conclude that Winstead did not place a condition on the moneys but merely tendered payment as ordered in the final judgment, Yeager had use of the moneys, i.e., any “loss of use” of the moneys by Yeager was eliminated, and the decision of the Court of Civil Appeals that Yeager was entitled to postjudgment interest conflicts with
 
 Birmingham Pain Center.
 

 Yeager maintains that the reliance by Winstead’s estate on
 
 Birmingham Pain Center
 
 is misplaced because, she says, the facts are distinguishable. Yeager recognizes that the pivotal question in determining whether postjudgment interest accrues is whether the judgment creditor has the opportunity to use the moneys while an appeal is pending. She maintains that, unlike in
 
 Birmingham Pain Center
 
 where BPC’s appellate rights were protected when the moneys were interpleaded in the trial court and Cosgrove had the opportunity for the moneys to be placed in an interest-bearing account, her appellate rights were not protected with the tender of the moneys to her and her counsel. Yeager states that because Winstead did not interplead the moneys in the circuit court and refused to sign a release stating that negotiation of the checks did not waive any relief awarded Yeager on the appeal, she was denied “use of the money,” and, therefore, postjudgment interest accrued. In essence, she argues that if she had “accepted the benefit” of the moneys, her appeal would have been jeopardized; therefore, she did not have “use of the money” until after her appeal was final.
 

 The fact that the moneys were tendered to Yeager and her counsel and not interpleaded in the circuit court did not deprive Yeager of the “use of the money” and warrant the accrual of postjudgment interest. In
 
 Bentley Systems, Inc. v. In-
 
 
 *769
 

 tergraph Corp.,
 
 922 So.2d 61 (Ala.2005), this Court stated:
 

 “Bentley has moved to dismiss Inter-graph’s cross-appeal because Intergraph deposited Bentley’s check in payment of the judgment. Bentley argues that In-tergraph has accepted the benefit of the judgment, and, therefore, that its cross-appeal should be dismissed. See
 
 Rice v. State Farm Fire & Cas. Co.,
 
 578 So.2d 1064 (Ala.1991); and
 
 Mobile Ins., Inc. v. Smith,
 
 441 So.2d 894 (Ala.1983), for the general rule that when an appellant accepts the benefit of a judgment, the appeal (or cross-appeal) from the judgment will be dismissed.
 

 “There are, however, exceptions to this general rule, as Intergraph Corporation points out in its opposition to Bentley’s motion to dismiss. First, the aeceptanee-of-benefits doctrine does not apply when the party voluntarily pays the judgment. See, e.g.,
 
 Garner v. Prewitt,
 
 32 Ala. 13 (1858). Second, a party can maintain an appeal or a cross-appeal without refunding judgment proceeds if the opposing party will suffer no injury, especially in a case in which the party making the payment cannot recover less than the amount of the judgment paid in the event a new trial is ordered. See
 
 Aleo Land & Timber Co. v. Baer,
 
 289 Ala. 567, 269 So.2d 99 (1972).”
 

 922 So.2d at 69-70.
 

 Yeager’s negotiation of the moneys would not have impacted her rights on appeal. Winstead voluntarily paid the judgment ordered by the court. Additionally, Yeager would not have suffered any injury on appeal by accepting the benefit of the moneys. Winstead did not file a cross-appeal challenging the amount of the judgment awarded Yeager; consequently, the minimum amount of the award ($38,-000) was not in dispute, and Yeager could not recover less than that amount. Therefore, the aeceptance-of-benefits doctrine is inapplicable and provides no reasonable basis to support an argument that Yeager was denied the use of the moneys because the funds were not interpleaded. Yeager’s distinction between
 
 Birmingham Pain Center
 
 and this case is not persuasive.
 

 Conclusion
 

 Because Winstead’s tender of the moneys was in accordance with the circuit court’s judgment and Winstead did not place any condition on the moneys that was not found in the circuit court’s judgment, there was no “nonpayment” of the moneys that would allow interest to accrue. The judgment of the Court of Civil Appeals is reversed, and this cause is remanded for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and LYONS, WOODALL, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.