145 So.2d 179

C. A. BOOHAKER, formerly d/b/a Cab Lumber Co.

v.

J. Allen TROTT, Jr., d/b/a Mecho of Alabama.

8 Div. 103.

Supreme Court of Alabama.

Sept. 20, 1962.

Horace E. Garth, Huntsville, for appellee.

HARWOOD, Justice.

The complaint below was in a single common count and claimed $1365.00 for work and labor done.

The defendant filed a sworn plea questioning the jurisdiction of the court below. A demurrer to this plea being sustained, issue was joined on a plea of the general issue, and an additional plea in short by consent, with leave, etc.

The action of the court in sustaining the plaintiff's demurrer to the sworn plea going to the jurisdiction of the court below is not raised in this appeal.

The evidence shows that the defendant below, who is the appellant here, and who for convenience will hereinafter be referred to as the defendant, had been awarded a contract for the construction of Monte Sano school in Huntsville.

In turn, the defendant entered into a subcontract with the plaintiff below for the installation of the plumbing in the school. This included the construction of a large septic tank which was to be thirty-one and one-half feet long by nine feet wide, and eleven feet deep.

Under the original agreement between the plaintiff and the defendant, the plaintiff was to receive $10,500.00 for the plumbing work. The original agreement did not contain a "rock" clause and at the plaintiff's request the contract was amended by

Ross, Ross & Ross, Bessemer, Culver & Miller, Huntsville, for appellant.

a letter from the defendant to the plaintiff which read: "This is to amend our contract dated November 25, 1958, on the above referred to job as follows: 'We will pay as an addition to the contract $35.00 per cubic yard for rock excavation as defined in the specifications and determined by the architect. *We trust this meets your approval.'*"

The plaintiff introduced evidence tending to show that as he proceeded with the excavation for the reception of the septic tank, which was being done with a machine called a back hoe, rock was hit at a depth of about six feet, and could not be handled with the back hoe. He contacted the defendant's superintendent on the job and requested that the architect be sent for.

Work on the excavation was discontinued awaiting an inspection of the alleged rock formation by the architect.

During this waiting period, according to the plaintiff, he was urged by the defendant, and also by the defendant's superintendent, to go ahead and complete the excavation "regardless." We interpret this to mean regardless of an inspection by the architect.

After about a week the plaintiff moved in a jack-hammer and air compressor, and a crew of five men and removed some thirty-nine cubic yards of sandstone which the plaintiff contends was rock.

The evidence presented by the defendant was directed toward showing that the material which the plaintiff claims was rock was in fact a soft and disintegrated type of sandstone which should not be classed as rock.

In this connection Mr. Tom Jones, the architect, testified that upon being requested to inspect the alleged rock encountered in the excavation, he took with him Paul Walker, another employee of his architectural firm, to the excavation. The reason he had Walker go with him was because of Walker's prior experience in determining what was rock since he, Jones, had had no prior experience along this line.

They went to the excavation, obtained a ladder and climbed down to the bottom. According to Mr. Jones, they found a thin layer of moist sandstone which, with the aid of a pipe found in the excavation, they were able to pry loose. This substance was crumbly and was not rock and Mr. Jones stated they pushed the pipe into this substance maybe three inches.

Mr. Walker testified that the sandstone they found at the bottom of the excavation could be pried up with the pipe, and that they did not take a core drill and get a sample of what might be under this thin top layer. According to Mr. Walker, they did not go down any deeper in what they "were standing on" and he did not know what might be under this layer.

The plaintiff in rebuttal introduced evidence tending to show that sandstone occurs in layers. The top layer generally from two to six inches thick is often moist and soft, while the deeper layers are hard and brittle, and properly classified as rock.

■ All in all a question for the jury as to the nature of the formation encountered in the excavation was presented, and by their verdict it is apparent that the jury found this issue in favor of the plaintiff.

However, the evidence shows that a dispute arose between the plaintiff and the defendant as to whether or not the material encountered in the excavation was rock, and therefore as to whether the plaintiff was entitled to any additional payment under the "rock" clause contained in the contract as amended.

The plaintiff testified that after he had completed the excavation he met the architect, Mr. Jones, one morning at the school site: "As I was coming out, he was going in. And I asked him—we were on friendly terms—and I said, 'Tom, when are you going to pay me for my rock?' And he said, 'The way I wrote those specifications, that ain't rock.' And I just laughed. I thought he was kidding."

The plaintiff testified that it was very likely that he saw the defendant at the

school site on August 7, 1959, at about 5:30 P.M., and the defendant told him that he was in the process of ordering the final payment from the Board of Education for the school construction and the defendant advised him that he had forwarded the plaintiff's claim for reconsideration to the Board of Education and they had denied the extra claim for excavating rock on the basis of the architect's report.

The plaintiff further testified that he did not recall the exact date of this conversation but at that time he imagined that he had told Mr. Boohaker, the defendant, to go ahead and send his final check without taking into consideration the rock clause, as he was needing the money.

The record further shows that the septic tank excavating was finished between the 10th and 14th of June 1959. Plaintiff billed the defendant for the additional amount claimed under the "rock" clause on 29 July 1959.

The defendant's version of his conversation with the plaintiff relative to the dispute over whether the sandstone encountered should be classified as rock, and their negotiations in connection therewith are well illustrated by the following excerpts from the defendant's testimony:

"As to his request for additional money. I immediately sent his request to the owner. And I told him on that date—I had told him before that date —that the owner had rejected it. But on this particular occasion, on August 7th in the afternoon, I had waited for Mr. Trott and met him up there. And my discussion with him was with reference to this claim he had that had been rejected by the architect and the owner. And I told him we were getting in the position to have a final check on the job and I wanted to know right then whether he was going to pursue this claim or not so that I would know what to do with the owner. I said, 'They have rejected it and you are getting in a wrangle. They say the stuff

you hit wasn't rock, and it is going to hold everybody's money up, mine and yours and all the sub-contractors.' And we discussed it at length. And the final decision was I would just go ahead and send him the money and forget it.'"

Defendant further testified that it was on the basis of their conversations that he mailed to the plaintiff a check in the amount of $2,514.30, dated September 14, 1959; that he told the plaintiff that he was going to issue the check and that it would be in full settlement of all claims, and the plaintiff had replied: "Send me the check."

The sum of money represented by the check, together with prior payments to the plaintiff, and charge backs on the contract for work done on the excavation by the defendant, amounted to $10,500.00, the price agreed upon between the plaintiff and defendant for the plumbing work.

The check dated September 14, 1959, was received in evidence, and shows on the face of the check the following legend: "By Endorsement this check is accepted in full payment of the following account: 'Monte Sano Contract.' "

On the reverse side of the check appears the following legend: "Endorsement below acknowledges in full settlement of any and all claims as indicated in margin on face of this check."

The plaintiff testified that prior to endorsing and cashing the same, he typed under the legend appearing upon the face of the check the following: "Partial payment balance due. Rock clause $1365.00."

In reference to this check, the record shows the following during the cross-examination of the plaintiff:

"Q And what is that document?

"A It is the check which Mr. Boohaker meant to be the final payment.

"Q What does the notation in the first column show?

"A I beg your pardon?

"Q What does the notation in the first column show?

"A You mean the part over here?

"Q Yes, sir.

"A On the top it says 'Monte Sano School,' and I typed, 'Partial Payment Balance Due. Rock Clause $1,365,00.'

"Q In other words, you changed that or altered it yourself?

"A I certainly didn't alter it.

"Q You altered that portion by including something else?

"A I amended it."

Assignments of error 10, 12, 14, 15, and 20, are grouped for argument in appellant's brief. Assignments 10 and 12 relate to the refusal of appellant's requested charges 1 and 2, which are affirmative in nature. Assignments 14 and 15 relate to the refusal of appellant's requested charges 3 and 4, which charges concern the effect of the plaintiff's action in cashing the check of 14 September 1959, with the legends appearing on the check. Assignment 20 alleges error in the action of the court in overruling defendant's motion for a new trial. Two of the grounds of the motion for a new trial relate to the refusal of defendant's requested charges 1 and 2.

Thus all of these assignments pertain to, and relate to, the sufficiency of the undisputed evidence concerning the acceptance and cashing of the check of 14 September 1959, and its legal effect in creating an accord and satisfaction.

■ When assignments of error are so related and present a single question, it is proper to group them for argument in brief. Wells Co. v. Lane, 217 Ala. 10, 115 So. 77, and the rule that if assignments are argued in bulk, and one assignment is not well taken, then review of the other assignments will be pretermitted, will not be invoked. White Dairy Co. v. Sims, 230 Ala. 561, 161 So. 812.

■ Counsel for appellant argues that the check of 14 September 1959, related only to the original contract and the sum claimed for the rock excavating arose under a separate contract, and therefore the check can in no way be considered as an accord and satisfaction of the additional claim for excavating the rock.

We do not agree. The work was done under a contract entered into in November 1958, which contract was amended by adding the "rock" clause. All work had been completed under the contract as amended. A balance was due the plaintiff, though a dispute arose between the plaintiff and defendant as to the amount of this balance due.

Under these conditions the defendant mailed the check of 14 September 1959, with the legends thereon. After adding the statement "Partial payment balance due. Rock Clause $1,365.00," the plaintiff cashed the check.

The issuance of the check of September 14, 1959, with the legends indicating that it was in full payment of the claim of the plaintiff, as well as the fact that a bona fide dispute existed between the parties as to the amount due, is established by undisputed evidence. The fact that the plaintiff attempted to "amend" the legend on the check cannot avail him.

The principles governing the above undisputed facts are clearly set forth in Ex parte Southern Cotton Oil Co., 207 Ala. 704, 93 So. 662, wherein the court wrote:

"In the instant case the plea alleges that the check tendered to plaintiff, and received and collected by him, carried on its face the words—'a/c in full to date $81.84.' Such a statement, made in connection with a previous or current dispute between the parties as to the amount justly due, could have but one meaning, which was, we think, incapable of being misunderstood, viz. that the payment was offered in full satisfaction of the account, and on that condition only. In such a case, as said.

by the New York court in Fuller v. Kemp, supra [Fuller v. Kemp, 138 N.Y. 231, 33 N.E. 1034, 20 L.R.A. 785]:

" 'Upon receipt of this letter [stating that the check was to be in full satisfaction of plaintiff's claim] the plaintiff had but a single alternative presented for his action—the prompt restoration of the money to his debtor or the complete extinguishment of the debt by its retention. The tender and the condition could not be dissevered. The one could not be taken and the other rejected. The acceptance of the money involved the acceptance of the condition, and the law will not permit any other inference to be drawn from the transaction. Under such circumstances the assent of the creditor to the terms proposed by the debtor will be implied, and no words of protest can affect the legal quality of his act.'

"In Canton, etc., Co. v. Parlin, etc., Co., 215 Ill. 244, 74 N.E. 143, 106 Am. St.Rep. 162, the debtor's check was accompanied by a letter stating that it was 'in full of account.' Said the court:

" 'If the offer is made in such a manner, and it is accepted, the acceptance will satisfy the demand, although the creditor protests at the time that the amount received is not all that is due or that he does not accept it in full satisfaction of his claim. The creditor has no alternative except to accept what is offered with the condition upon which it is offered, or to refuse it; and if he accepts, the acceptance includes the condition, notwithstanding any protest he may make to the contrary.'

\* \* \* \* \* \*

"It is sufficient to say of the cases of Hodges v. Tenn. Implement Co., 123 Ala. 572, 26 South. 490, and Roach v. Warren-Neeley & Co., 151 Ala. 302, 44 South. 103, cited by counsel for appellant, that they involved attempted satisfactions of larger undisputed debts, as expressly stated therein, and are therefore not in point."

Again, in Brackin v. Owens Horse and Mule Co., 195 Ala. 579, 71 So. 97, we find the following doctrine enunciated:

" \* \* \* What was said in Hand's Case [Hand Lbr. Co. v. Hall], supra, 147 Ala. [561], 567, 41 South. [78], 80, is apt and conclusive here: 'The plaintiff must have known the tender was made on condition, and, having accepted and collected the check, was bound by the condition. 1 Cyc. 333. "While a mere tender, though of the whole amount due, when unaccepted, does not operate to extinguish or satisfy the claim, yet when made in full of the amount due and accepted, without protest as to its sufficiency, the debt becomes extinguished. The creditor may reject a tender on condition that he receive it in full of his claim; but, if he accept it, he is bound by the condition, and will not be allowed to keep the money and repudiate the conditions." Hanson v. Todd, 95 Ala. 328, 10 South. 354.' "

And in Newell Contracting Co. v. Lacy, 229 Ala. 208, 155 So. 379, we find this court commenting:

"Again there is no legal obligation to cash a check tendered as a full settlement of a disputed claim when it is not for the correct amount due. If plaintiff had cashed the check so tendered, that circumstance would have given rise to a claim that it was an accord and satisfaction. Brackin v. Owens Horse & Mule Co., 195 Ala. 579, 71 So. 97; Ex parte So. Cotton Oil Co., 207 Ala. 704, 93 So. 662; Dreyfus Bros. v. Corn Products Co., 204 Ala. 593, 86 So. 386.

"The payee should ordinarily either cash the check in a reasonable time, or return it to the drawer. \* \* \*"

In Leader v. Vaughan, 20 Ala.App. 545, 103 So. 718, a dispute had arisen between the parties as to the balance due on an attorney's fee. The defendant sent to the plaintiff a check on the face of which was written: "In full for lawyer's fee to date."

The plaintiff cashed the check, and then sued for the balance he alleged to be due. From a judgment for the plaintiff, the defendant appealed. In reversing the judgment, the Court of Appeals wrote:

"* * * There can be no doubt, that, at the time defendant sent the check above described, and plaintiff accepted it, both parties knew there was a dispute as to the amount due on the claim. A recovery by plaintiff would of necessity be based upon a quantum meruit. We are of the opinion that, under the facts in this case, defendant was entitled to the general affirmative charge and, for the error in refusing to give this, the judgment must be reversed, and the cause remanded. Hand Lbr. Co. v. Hall, 147 Ala. 561, 41 So. 78; Brackin v. Owen H. & M. Co., 195 Ala. 581, 71 So. 97; Ex parte Southern Oil Co., 207 Ala. 704, 93 So. 663."

We think the doctrines enunciated in the above cases necessitate the conclusion that the lower court erred in refusing charges 1 and 2, which were affirmative in nature.

Reversed and Remanded.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.