On April 21, 2003, Leon Joseph Wallace ("the husband") filed a declaratory-judgment action against Joanna Wilkerson Wallace ("the wife"). The husband requested that the trial court declare that he had satisfied his obligation under the parties' property-settlement agreement, which had been incorporated into their divorce judgment. On May 13, 2003, the wife answered the husband's petition and filed a counter-petition requesting that the trial court find the husband in contempt of court for his alleged failure to pay her the amount due under the property-division portion of their divorce judgment. The husband's answer to the counterpetition, as amended, asserted the affirmative defense of accord and satisfaction.[1] The wife moved the trial court for a summary judgment; the trial court denied that motion.
The trial court conducted a hearing on November 18, 2003, at which it received ore tenus evidence. On January 23, 2004, the trial court entered a judgment in favor of the husband, finding, among other things, that the husband had fully satisfied his obligations under the property-division portion of the divorce judgment. On February 20, 2004, the wife filed a post-judgment motion; that motion was denied by operation of law, pursuant to Rule 59.1, Ala. R. Civ. P. The wife timely appealed.
Our review of the record reveals the following facts. On September 24, 2001, the parties were divorced by a judgment of the trial court. The divorce judgment incorporated the terms of an agreement reached by the parties. The judgment *Page 829 
stated that the parties jointly owned a home, the marital home, which was subject to a mortgage indebtedness and an equity-line indebtedness. The parties had entered into an option-to-purchase contract with a third party to sell the marital home. The divorce judgment provided that if the option to purchase was not exercised, the wife would have the "use and possession" of the marital home until the home was sold. The judgment also provided that the parties would equally divide the responsibility for making the mortgage and equity-line payments until the marital home was sold. The judgment did not provide a specific time limitation for the duration of the wife's use and possession of the marital home or for the duration of the requirement that the parties equally share responsibility for the payments. Under the judgment, the shared payments were to continue until the "closing of the sale" of the marital home. Additionally, under the heading "Property Settlement," the judgment provided:
 "The husband shall pay to the wife the sum of $8,750 in 22.72 monthly payments of $385 each over a term not to exceed 28 months. Payments shall begin on the first day of the month following the closing of the sale of the marital residence."
(Emphasis added.)
At the hearing in this matter, the wife testified that the option-to-purchase contract was not exercised and that the sale of the marital home anticipated by the parties at the time of the divorce did not materialize. The wife stated that she had made an effort to sell the marital home by placing a sign in the yard and by showing the marital home to potential buyers but that the marital home did not sell until January 2003, approximately 16 months after the parties were divorced.
According to the wife, she lived in the marital home by herself during that period; the husband had moved to Florida before their divorce was finalized. The wife stated that throughout the 16-month period during which she lived in the marital home after the divorce, she divided the marital-home payments with the husband. The wife explained that even after the marital home was sold, she continued to live in the home as a tenant of the buyer. She remained there until June 2003, when contractors finished building a new home she had purchased. The wife stated that the husband occasionally expressed to her his concern about the length of time the marital home had been on the market and about how much it was costing him to share the payments on the debt owed on the marital home with her.
The husband testified that he sent an e-mail message to the wife in May 2002 expressing his concern about the delay in the sale of the marital home. The husband indicated in his testimony that the wife had failed to properly market the marital home. The husband explained that when he was in town on one occasion, he observed that the marital home did not have a "for sale" sign in the yard, that the home was not listed with any real-estate agency, and that there was no other type of marketing of the home. After that, the husband testified, he listed the marital home with his own realtor. A "real estate sales contract" submitted to the trial court reflects that the marital home was sold approximately four months after the husband listed it with a realtor.
The husband testified that since the parties' divorce he had paid the wife a total of $9,599.83 for his one-half share of the indebtedness on the marital home. The husband submitted into evidence his calculations to support his claim of having paid that amount. *Page 830 
The husband testified that in February 2003, after the marital home had been sold, he sent the wife a check for $840 and an accompanying letter dated February 17, 2003. The husband submitted into evidence a copy of the check and the letter. The "memorandum line" of the check read "property settlement — payment in full." In the February 17, 2003, letter the husband wrote, in relevant part:
 "[D]ocumentation will show that I have met the spirit of the [settlement agreement]. As the only person living in the house and driving the car, you are the sole beneficiary of the funds that have been paid. . . .
 "In fact, you have gotten your money (or the benefit thereof) faster by the turn of events. Instead of paying $8,750 over a period (not to exceed 28 months), I have paid over $7,910 in 15 months. Enclosed you will find a check for the balance of the property settlement in the amount of $840."
(Emphasis added.)
The wife testified that after she received the husband's check in February 2003 she consulted with her attorney. Following the consultation, the wife's attorney wrote the husband's attorney a letter dated February 24, 2003. That letter, submitted into evidence, stated in relevant part:
 "[The wife] contacted me and informed me the closing on the house was in January 2003. Under the terms of the divorce [judgment], [the husband] is to begin making monthly payments to [the wife] the month following the closing in the amount of $385 per month until the sum of $8,750 has been paid. [The wife] informed me she received a check from [the husband] in the amount of $840 which stated `property settlement — payment in full.'
 "I do not know the rationale behind [the husband's] actions, but the balance due per the court order is $7,910.
". . . .
 "Please forward this letter to [the husband] and advise him to make the monthly payments as ordered to avoid contempt proceedings."
The wife testified that after she consulted with her attorney, she crossed out the "in full" phrase from the check. The wife then cashed the check in April 2003.
The trial court's January 23, 2004, judgment states, in pertinent part:
 "The court has considered the evidence presented and finds that said agreement presumes a reasonable time period will apply as to the performance under the terms of the [divorce judgment]. The court finds that more than 16 months passed from the date of the [judgment] until actual closing of the house and that during that time, the husband paid a total sum of $8,432 for the house in which the wife continued to live until the closing and, in fact, until her house was ready to be moved into several months later.
 "The court further finds that the husband exercised due diligence in attempting to get the house sold and that there was evidence which indicated that the wife, who continued to reside in the house with the husband paying one-half of the payments on the house and who had relocated to Florida, did not necessarily exercise the same level of diligence in and about the sale of the house.
 "The court further finds that following the closing of the sale of the house, the husband sent to the wife a check for $840 which he stated was payment in full on any amounts due under the property settlement in light of amounts which he had previously paid during the pendency of the sale. The husband set *Page 831 
forth this accounting in a letter to the wife, which accompanied the $840 check. The court further finds that the husband marked the check `property-settlement-payment in full' when it was sent to the wife. The wife altered said check and marked out the `in full' portion. She then endorsed the check and negotiated it for the $840 amount. The wife does not dispute that she altered the check in this fashion and that she was aware of the husband's position that this was payment in full.
 "The court finds that agreements entered into between a husband and a wife are not unlike other contracts entered into in Alabama. The court will presume the parties intend to make a reasonable contract rather than an unreasonable one.
 "The court finds that the wife's action by taking the check marked payment in full and marking out the `in full' portion then accepting the proceeds therefrom constitutes an accord and satisfaction of the amounts owed. Further, the court finds that the husband otherwise discharged his obligations under the property settlement for a period longer than a reasonable period of time as would be construed under the terms of the original settlement agreement between the parties. As such, the husband has fully discharged his obligation to the wife by the actions noted herein and does not owe her any additional sums under the property settlement."
In her brief on appeal, the wife argues that the trial court erred in finding that the parties had entered into an accord and satisfaction that extinguished the husband's property-division obligation. In Newson v. Protective Industrial Insurance Co. ofAlabama, 890 So.2d 81, 87(Ala. 2003), our supreme court defined an accord and satisfaction as
 "`an agreement reached between competent parties regarding payment of a debt the amount of which is in dispute. There can be no accord and satisfaction "without the intentional relinquishment of a known right."'"
(Quoting Leisure American Resorts, Inc. v. Carbine Constr. Co.,577 So.2d 409, 411 (Ala. 1990).) The defense of accord and satisfaction requires:
 "(1) proper subject matter, (2) competent parties, (3) assent or meeting of the minds, and (4) consideration. Ray v. Alabama Central Credit Union, 472 So.2d 1012, 1014 (Ala. 1985), quoting Craft v. Standard Accident Insurance Co., 220 Ala. 6, 9, 123 So. 271, 273 (1929). Each of these four elements must be established in order to be successful on this defense."
Austin v. Cox, 492 So.2d 1021, 1022 (Ala. 1986).
In support of her argument on this issue, the wife first contends that the parties lacked the required element of a "meeting of the minds" to enter into an accord and satisfaction. The wife directs this court to the February 24, 2003, letter drafted by her attorney in which she contested the husband's position that the February 17, 2003, letter and check constituted the balance of the amount he owed her under the property-division portion of the divorce judgment and in which she urged the husband to pay $7,910, the balance she contended remained unpaid under the property-division portion of the divorce judgment. The wife maintains that that evidence indicates that the parties did not have a meeting of the minds with regard to whether the husband's February 17, 2003, letter and check constituted a satisfaction of the amount the husband owed the wife under the terms of the parties' divorce judgment. As discussed below, however, we cannot agree. *Page 832 
In Ex parte Meztista, 845 So.2d 795 (Ala. 2001) a case involving the dissolution of a partnership, Meztista, one of the partners, performed a final accounting of the partnership's assets and presented the calculation to his partner, Hylton. However, Meztista did not allow Hylton to check the partnership books or provide any explanation of certain expenses included in the accounting, even though Hylton had requested that information. Pursuant to that final accounting, Meztista issued a check payable to Hylton. The check contained the phrase "final payment/payment in full." Ex parte Meztista, 845 So.2d at 796. After she received the check, Hylton wrote on it the terms "under protest" and "cashing this check does not constitute my acceptance of this amount as payment in full." Ex parteMeztista, 845 So.2d at 796. Hylton then cashed the check.
Subsequently, Hylton brought an action against Meztista and the partnership alleging a breach of the partnership agreement and requesting a dissolution of the partnership and an accounting of the partnership profits. Meztista moved the trial court for a summary judgment, contending that Hylton's cashing of the check constituted an accord and satisfaction. The trial court agreed and entered a summary judgment in favor of Meztista. This court reversed the judgment of the trial court. Hylton v. Meztista,845 So.2d 792 (Ala.Civ.App. 2000).
On certiorari review, our supreme court reversed the judgment of this court. Ex parte Meztista, 845 So.2d at 798. The court began its analysis by explaining that an accord and satisfaction is contractual in nature: "`Like any other contract, a valid accord and satisfaction requires consideration and a meeting ofthe minds regarding the subject matter.'" Ex parte Meztista,845 So.2d at 797-98 (quoting Leisure American Resorts,577 So.2d at 411). In addressing whether there had been a "meeting of the minds," our supreme court rejected this court's reliance on Hylton's "subjective intent," and it held that where a party "endorsed and deposited [a] check, [the party] agreed to the condition upon which it was offered, and [the party] is estopped to deny that agreement." Ex parte Meztista, 845 So.2d at 798. In so holding, our supreme court quoted from the dissent inHylton v. Meztista, supra, that was authored by Judge Crawley and that Judge Thompson joined. That dissent stated, in pertinent part:
 "`[A party's] placing a restrictive endorsement on the check does not create an issue of fact as to whether an accord and satisfaction had occurred.
This court has held that a party in [the wife's] position has two options: (1) reject the offer of the check as full satisfaction of the disputed claim; or (2) accept the offer of the check as a full satisfaction by cashing or depositing the check. Public Nat'l Life Ins. Co. v. Highsmith, 47 Ala.App. 488, 256 So.2d 912 (Ala.Civ.App. 1971). The supreme court has held that a party in [the wife's] position does not have the option of accepting the offer of the check and placing a restrictive endorsement on it. Boohaker v. Trott, 274 Ala. 12, 16, 145 So.2d 179, 183 (1962) ("The fact that the plaintiff attempted to `amend' the legend on the check [from full payment to partial payment] cannot avail him."). Such an altering of the terms of the offer does not affect the validity of the accord and satisfaction. Id. According to the law as stated by Highsmith and Boohaker, [the wife's] endorsement on the check, indicating that she was not accepting the check as full payment . . ., is not relevant in light of the fact that she deposited the check. Her action of depositing the check completed the accord and satisfaction.'" *Page 833 
Ex parte Meztista, 845 So.2d at 797 (quoting Hylton v.Meztista, 845 So.2d at 795 (Crawley, J., dissenting)).
In this case, the husband submitted a copy of the check and the accompanying February 17, 2003, letter to the trial court. The wife testified that, after receiving the check and the letter, she sought her attorney's advice on the matter and then negotiated the check. Even though the wife argues on appeal that by endorsing and depositing the check she did not intend to extinguish the husband's obligation under the property-division portion of the parties' divorce judgment, under the authority ofEx parte Meztista, supra, the wife's subjective intent is not determinative. The wife, with knowledge that the husband contended that his obligation under the property-division portion of the divorce judgment had been met by the tender of the February 17, 2003, check, agreed to the husband's condition by endorsing and depositing the check; therefore, she is estopped from denying that the required element of a "meeting of the minds" was absent for the purpose of determining whether an accord and satisfaction has occurred. Ex parte Meztista,845 So.2d at 798.
The wife further contends that the husband failed to meet certain other elements of an accord and satisfaction. Specifically, the wife argues that the husband did not tender the check in "good faith" and that there was no "bona fide dispute," as required under § 7-3-311, Ala. Code 1975.[2] Section7-3-311 applies where "an accord and satisfaction is asserted on the basis of a written notation on a negotiable instrument, or a written communication accompanying a negotiable instrument." Alabama Comment to § 7-3-311, Ala. Code 1975. This opinion discusses the elements of a good-faith offer of an accord and satisfaction together with the requirement of a bona fide dispute.
In Ex parte Meztista, supra, our supreme court held that the element of good faith relates to "the offer of the accord, and not [to] any conduct relating to the underlying contract." Exparte Meztista, 845 So.2d at 798. The court explained:
 "`Good faith is demonstrated when the party tendering the instrument offers a check with the intent to honestly enter into an accord and satisfaction while observing reasonable commercial standards of fair dealing. The focus of the good faith inquiry is on the offer of the accord, and not on the actions of the parties in performing the underlying contract.'"
Ex parte Meztista, 845 So.2d at 799 (quoting Webb Bus.Promotions, Inc. v. American Elecs. Entertainment Corp.,617 N.W.2d 67, 73 (Minn. 2000)). Our supreme court, citing the fact that the parties were sophisticated business people who were aware of their rights and the nature of their dispute, concluded in Ex parte Meztista, supra, that there was no evidence to indicate that Meztista did not tender the *Page 834 
check to Hylton in good faith. 845 So.2d at 799-800.
With regard to the element of a bona fide dispute, our supreme court, in Ex parte Southern Cotton Oil Co., 207 Ala. 704,93 So. 662 (1922), presented a thorough discussion of that element of an accord and satisfaction. The supreme court stated:
 "`While it is not necessary that the dispute or controversy should be well founded, it is necessary that it should be in good faith. Without an honest dispute, an agreement to take a lesser amount in payment of a liquidated claim is without consideration and void. A dispute cannot be raised for the mere purpose of extorting money. And an arbitrary refusal to pay, based on the mere pretense of the debtor, made for the obvious purpose of exacting terms which are inequitable and oppressive, is not such a dispute as will satisfy the requirements of the rule.'"
Ex parte Southern Cotton Oil Co., 207 Ala. at 705,93 So. at 664 (quoting 1 C.J., Accord Satisfaction § 75 (1914)). Our supreme court went on to state:
 "`If a debt or claim be disputed . . . at the time of payment, the payment, when accepted, of a part of the whole debt is a good satisfaction and it matters not that there was no solid foundation for the dispute. The test in such cases is: Was the dispute honest or fraudulent? If honest, it affords a basis for an accord between the parties, which the law favors, and the execution of which is the satisfaction.'"
Ex parte Southern Cotton Oil Co., 207 Ala. at 706,93 So. at 664 (quoting Simons v. American Legion of Honor, 178 N.Y. 263,70 N.E. 776 (1904)).
In the instant case, the husband introduced into evidence an accounting of the payments he had made toward the debt owed on the marital home during the approximately 16 months during which the wife lived in the marital home after the divorce judgment was entered. The husband also submitted to the trial court a copy of the $840 check conspicuously stating "property settlement — payment in full," and the February 17, 2003, letter in which he asserted that he had already paid the wife $7,910 towards his obligation under property-division portion of the divorce judgment and that only $840 remained unpaid. The husband also indicated in that February 17, 2003, letter that the enclosed check was for the "balance of the property settlement" and specified "payment in full" on the check. The wife consulted an attorney before she endorsed and deposited the husband's check. We conclude that there is substantial evidence to support the conclusion that the husband offered his check as a good-faith offer to extinguish his obligation under the property-division portion of the divorce judgment. Ex parte Meztista, supra. Also, there is substantial evidence to support the conclusion that the husband's dispute of the amount he owed the wife under the divorce judgment was "real, not simulated, and based upon a ground that is at least colorable." Ex parte Southern Cotton OilCo., 207 Ala. at 706, 93 So. at 664.
In her brief on appeal, the wife also contends that the trial court's judgment amounts to an impermissible modification of the property-division portion of the parties' divorce judgment. The wife is correct in her assertion that, generally, a trial court may not modify a property-division portion of a divorce judgment more than 30 days after the entry of the judgment. McGiboney v.McGiboney, 679 So.2d 1066, 1068 (Ala.Civ.App. 1995); Russell v.Russell, 386 So.2d 758 (Ala.Civ.App. 1980). However, in this case, the trial court found that the husband had fully *Page 835 
satisfied his obligation to the wife under the property-division portion of the divorce judgment. The record does not support a conclusion that the trial court's January 23, 2004, judgment constituted a modification of the property-division portion of the parties' divorce judgment. Accordingly, we conclude that the wife's argument as to this issue is without merit.
The wife's request for an attorney fee on appeal is denied.
AFFIRMED.
MURDOCK and BRYAN, JJ., concur.
CRAWLEY, P.J., dissents, with writing, which PITTMAN, J., joins.
[1] The timeliness of the husband's assertion of the affirmative defense of accord and satisfaction was not raised by the wife. An issue not raised on appeal is deemed to have been waived. Pardue v. Potter, 632 So.2d 470, 473 (Ala. 1994).
[2] Section 7-3-311, Ala. Code 1975, is entitled: "Accord andsatisfaction by use of instrument."
That statute provides, in pertinent part:
 "(a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.
 "(b) . . . [T]he claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim."
(Emphasis added.)