THOMPSON, Judge.
Hartford Accident & Indemnity Company (“Hartford”) appeals a judgment entered against it and in favor of Cochran Plastering Company, Inc. (“Cochran Plastering”).
Lee L. Saad Construction Co., Inc. (“Saad Construction”), entered into a contract pursuant to which it was to serve as the general contractor for the construction of Semmes Middle School (“the school”) for the Board of School Commissioners of Mobile County (“the Board”) and the Alabama Public School and College Authority. Hartford was Saad Construction’s surety, pursuant to § 39-1-1, Ala.Code 1975, for the school-construction contract. Saad Construction hired Cochran Plastering to perform certain work as a subcontractor in the construction of the school. After the construction of the school, a dispute arose between Saad Construction and Cochran Plastering regarding amounts due to be paid to Cochran Plastering.
Cochran Plastering sued Hartford, as Saad Construction’s surety asserting a breach-of-contract claim and seeking to recover $22,191.19, plus interest and an attorney fee. Saad Construction intervened in the action and filed a third-party claim alleging assault and trespass against Cochran Plastering; Cochran Plastering filed a claim alleging assault against Saad Construction. Both Cochran Plastering and Saad Construction amended their claims against the other.
The trial court conducted a hearing and received ore tenus evidence. At the beginning of that hearing, Cochran Plastering and Saad Construction each moved to dismiss their assault claims, and Saad Construction moved to dismiss its trespass claim against Cochran Plastering. On January 26, 2005, the trial court entered a judgment in which it found in favor of Cochran Plastering and against Saad Construction on Cochran Plastering’s breach-of-contract claim. On Saad Construction’s motion, the trial court later amended that judgment to find in favor of Cochran Plastering and against Hartford and awarded Cochran Plastering $33,978.88 in damages, including costs and an attorney fee. Hartford timely appealed.
The record indicates the following pertinent facts. Saad Construction contracted to pay Cochran Plastering a total of $287,750 in exchange for Cochran Plastering’s performing plastering or stucco work on the construction of the school. The contract between Saad Construction and Cochran Plastering provided that Saad *465 Construction make periodic progress payments to Cochran Plastering as Cochran Plastering completed portions of its work. Those progress payments were subject to a 5% ’’retainage.” Michael Cochran (“Cochran”), one of the owners of Cochran Plastering, explained that general practice in the construction industry allows a general contractor to retain a portion of the amount to be paid to a subcontractor in order to ensure the completion of and the quality of the work performed by the subcontractor.[1]
As its work progressed, Cochran Plastering submitted periodic progress-payment requests, and Saad Construction paid those requests in a timely manner. Each of the payment requests contained a provision entitled “certification by the subcontractor,” which stated, among other things, that Cochran Plastering certified that “payments, less applicable retention, have been made through the period covered by previous payments received from [Saad Construction].”
After Cochran Plastering completed its work on the school, it submitted its final payment request, seeking payment in the amount of $12,849.27; that amount did not include the retainage amount, which, at that point, totaled $9,341.92. Saad Construction supplied Cochran Plastering with a form entitled “final release and waiver of lien from subcontractor” (“the release”) to sign, and on August 14, 2002, Cochran, on behalf of Cochran Plastering, signed that release. The release stated that the amount of the final periodic payment request, $12,849.27, “pa[id] in full the contract between [Cochran Plastering and Saad Construction]” and that “[t]his waiver is contingent on the payment of the above-listed amount.”
Cochran testified that it was standard industry practice for a subcontractor to execute releases such as the one he executed on August 14, 2002, in order to receive its final payment, and that the subcontractor generally received the payment set forth in the release within 30 days of the execution of the release. Cochran further testified that it was standard procedure for the subcontractor to be paid the retainage amount within a period of a few months to a year after the execution of the “final” release, and that in exchange for the payment of the retainage, the subcontractor would sign yet another release. The testimony of Paul Baker (“Baker”), Cochran Plastering’s former business manager, supported Cochran’s testimony on these matters. However, Lee Saad (“Saad”), the president of Saad Construction, disputed that testimony; he stated that in his 20 years’ experience in the construction industry, he had only given or obtained releases for the “final payment.”
It is undisputed that Saad Construction did not pay the $12,849.27 when Cochran signed the release or within 30 days of Cochran Plastering’s submitting the periodic-payment request, together with the release. Baker testified that he telephoned Saad Construction repeatedly in an effort to obtain payment. Saad Construction had requested that Cochran Plastering submit certain materialmen-lien waivers and other documents pertinent to the tax-exempt status of the project. Apparently in an attempt to deliver those doeu- *466 ments to Saad Construction, Cochran traveled to Saad Construction’s workplace on November 25, 2002. However, during that meeting, Cochran and Saad became involved in a physical altercation; that altercation formed the basis of the trespass and assault claims that were later voluntarily dismissed. Cochran testified that he did not leave the requested waivers or tax documents with Saad Construction after that physical altercation.
Two days after the altercation, on November 27, 2002, Cochran Plastering submitted to Saad Construction a request for payment of the 5% retainage. On November 30, 2002, Saad sent a letter to Cochran Plastering rejecting the request for the payment of the retainage, citing as the basis for that rejection his contention that Cochran Plastering had “breached [the] contract.” The trial court questioned Saad regarding his contention that Cochran Plastering had breached the contract; Saad responded by stating that “I felt like I did not want to be dealing with him anymore, your Honor.”
On December 4, 2002, the lien-waiver and tax documents Saad Construction had requested from Cochran Plastering were in the possession of either Saad Construction or its attorney. However, Saad Construction did not pay either the amount specified in the August 14, 2002, release or the amount of the retainage at that time or within 30 days of receiving those documents.
During the trial, Saad insisted that he and Baker had an agreement that Cochran Plastering would pay certain “backcharg-es,” or charges for the use of Saad Construction’s equipment by Cochran Plastering. According to Saad, Baker agreed to waive the retainage in exchange for Saad Construction’s waiving the “backcharges,” and, Saad alleged, the language of the release incorporated that agreement. Baker disputed that testimony by denying that he had ever discussed “backcharges” with anyone at Saad Construction. Saad acknowledged that he had not mentioned any “backcharges” in any of his correspondence with Cochran Plastering. Saad stated that he never “sat down and formally put together” the amount of “backcharges” he contended was owed by Cochran Plastering; however, he estimated those charges to be “around seventeen, eighteen thousand, somewhere in that range.”
On February 23, 2003, Cochran Plastering filed its complaint in this matter. On August 6, 2003, while the action was pending in the trial court, Saad Construction sent Cochran Plastering a check for $12,849.27, together with a letter stating:
“With this letter we are enclosing Saad Construction’s check for $12,849.27, made payable to Cochran Plastering Company and [Cochran Plastering’s] attorney. In making this payment, Saad Construction does not admit any other, further, or different responsibility and insists that it was entitled to act within the scope of its contract.”
The “memo” line of the August 6, 2003, check read “Semmes sub August.” Saad testified that he relied on the release in sending the August 6, 2003, check, and that he would not have sent that money had he not thought it would settle the dispute between Saad Construction and Cochran Plastering.
Cochran Plastering negotiated the August 6, 2003, check, and Cochran sent a letter, dated August 7, 2003, to Saad Construction, stating:
“I have Lee Saad Construction Company, Inc.’s check in the amount of $12,849.27 which you forwarded under cover of letter dated August 6, 2003. I wanted to make it clear that by negotiating this check, Cochran [Plastering] does not waive or release any claim it *467 may have against Saad Construction or Saad’s surety for additional amounts due, or for attorney’s fees and interest on the amount paid, as well as additional amounts due.”
The parties appeared for trial on January 18, 2005. At the trial, Hartford raised, for the first time, the defenses of release and accord and satisfaction. However, those defenses were tried by the implied consent of the parties. See Rule 15(b), Ala. R. Civ. P.; and Tounzen v. Southern United Fire Ins. Co., 701 So.2d 1148, 1150 (Ala.Civ.App.1997). In finding in favor of Cochran Plastering on its breach-of-contract claim, the trial court awarded Cochran Plastering damages “in the amount of $11,051.90, said award consisting of $9,341.92 in retainage and $1,709.08 for interest at 6% .... [Cochran Plastering] is further awarded the sum of $21,577.50 in attorney fees” and “[c]osts in the amount of $888.48.”
Initially, we note that we agree with Hartford’s argument on appeal that Hartford cannot be liable to Cochran Plastering unless Cochran Plastering was entitled to recover from Saad Construction. See Federal Ins. Co. v. I. Kruger, Inc., 829 So.2d 732, 736 (Ala.2002) (if there is no right of recovery against the principal, there is no right of recovery against the surety on the payment bond); and Magic City Paint & Varnish Co. v. American Surety Co. of New York, 228 Ala. 40, 43, 152 So. 42, 44 (1934) (“if liability be not shown against the contractor, clearly none can be established against the surety”).

Condition Precedent

Hartford argues on appeal that a condition precedent to Saad Construction’s obligation to pay Cochran Plastering was that Saad Construction be paid by the Board, and that because that condition was not met, Saad Construction had no liability to Cochran Plastering. Hartford cites only the emphasized portion of the following quote from the final-payment provision contained in the contract between Saad Construction and Cochran Plastering:
“Final payment constituting the entire balance of the Subcontract Sum shall be made by the Contractor to the Subcontractor when the Subcontractor’s work is fully performed in accordance with the requirements of the contract documents, the Architect has issued a Certificate for Payment covering the Subcontractor’s completed work, and the Contractor has received payment from the owner. Final payment shall then be made to [Cochran Plastering] withing fifteen (15) days following [Saad’s] receipt of payment from [the Board].”
(Emphasis added.)
It is undisputed that the Board made a payment to Saad Construction by, at the latest, November 2002,[2] and that, thereafter, Saad Construction sent a letter to Cochran Plastering asking it to submit certain waivers so that Saad Construction could send Cochran Plastering its final payment. In arguing in its brief on appeal that Saad Construction has not been paid by the Board, Hartford relies on the fact that, at the time of the trial in this matter, litigation between Saad Construction and the Board was pending in another action.[3] *468 Hartford maintains that it is not required to pay Cochran Plastering until the litigation between Saad Construction and the Board results in Saad Construction’s receiving its final payment under its contract with the Board. It is unclear what position Hartford takes with regard to Saad Construction’s paying Cochran Plastering should that litigation not end in a result favorable to Saad Construction.
When read in its entirety, however, the “final payment” provision of the contract between Saad Construction and Cochran Plastering does not support the interpretation advanced by Hartford. The final-payment provision clearly establishes that Cochran Plastering was to be paid after the architect submitted the certificate for payment to the Board and the Board paid Saad Construction. There is no dispute that Saad Construction received that progress payment from the Board by November 2002 for work on the project that included Cochran Plastering’s completed work. However, Saad Construction did not pay Cochran Plastering in compliance with the final-payment provision. Hartford has failed to demonstrate error with regard to this issue.
Further, we must also reject Hartford’s “condition precedent” argument on other grounds. In Federal Insurance Co. v. I. Kruger, Inc., supra, our supreme court analyzed a clause similar to the one at issue in this case, which that court characterized as a “pay-when-paid clause.” Our supreme court concluded that the clause at issue in that case was “merely a timing mechanism for the final payment under the subcontract,” rather than a condition precedent to the subcontractor’s being paid. 829 So.2d at 737. Hartford argues that the pay-when-paid clause at issue in Federal Insurance Co. v. I. Kruger, Inc., supra, is distinguishable from the pay-when-paid clause at issue in this case, and, therefore, that the clause at issue in this case bars Cochran Plastering from recovering under the payment bond. We find an analysis of the two pay-when-paid clauses to be unnecessary under the facts of this case because our supreme court held in Federal Insurance Co. v. Kruger, supra, that a surety could not assert as a defense to its liability under a payment bond a pay-when-paid clause contained in a contract between a contractor and a subcontractor. The court explained that “[t]he payment bond and the subcontract are separate contracts,” and that in that case, as in this case, the payment bond does not condition payment by the surety on the owner’s paying the general contractor. Federal Ins. Co. v. I. Kruger, Inc., 829 So.2d at 741. “[Allowing a surety on a payment bond, such as [Hartford], to assert a pay-when-paid clause as a defense to an action seeking payment on the bond would defeat the very purpose of a payment bond issued to guarantee payment to a subcontractor,” 829 So.2d at 741, which is “to ‘shift the ultimate risk of nonpayment from workmen and suppliers to the surety.’ ” 829 So.2d at 736.
Hartford, and not Saad Construction, is the defendant in this action. Hartford’s surety contract “does not condition payment to [Cochran Plastering] on the [Board’s] making a final payment to [Saad Construction].” See Federal Ins. Co. v. I. Kruger, Inc., 829 So.2d at 741.
“ ‘[Cochran Plastering] is suing under the [payment bond issued by Hartford] and not the subcontract. The two are separate agreements. [Hartford] has neither cited, nor have we discovered, any authority for the proposition that the inability to proceed against the gen *469 eral contractor because of a “pay when paid” clause in the subcontract necessarily prevents recovery against [Hartford] under the payment [b]ond. Indeed, such an argument runs counter to the underlying purpose of the payment [b]ond, i.e., the assurance of payment to subcontractors.
[[Image here]]
“ ‘... [Hartford’s] obligations under the [b]ond are completely unrelated to the “pay when paid” clause. Moreover, payment by the owners to [Saad Construction] is not within [Cochran Plastering’s] control. Pursuant to [Hartford’s] theory, a subcontractor could satisfactorily perform all of its own obligations under the subcontract and yet never recover under the [b]ond if the general contractor does not receive payment from the owner.’ ”
Federal Ins. Co. v. I. Kruger, Inc., 829 So.2d at 741-42 (quoting Brown & Kerr Inc. v. St. Paul Fire & Marine Ins. Co., 940 F.Supp. 1245, 1249 (N.D.Ill.1996)). Given the foregoing, we cannot say that Hartford has demonstrated that it is entitled to prevail based upon its “condition precedent” argument.

Release

Hartford also argues that the August 14, 2002, release was valid and enforceable and that it barred all further recovery by Cochran Plastering. In asserting this argument, Hartford intertwines arguments pertaining to the purported release with arguments pertaining to the defense of an accord and satisfaction. Our supreme court has quoted with approval the following jury instruction that explains the distinction between a release and an accord and satisfaction:
“ ‘A release is the giving up or abandoning of a claim or right by the person in whom it exists or to whom it accrues to the party against whom the claim exists or the right is to be enforced or exercised....
[[Image here]]
“ ‘An accord is an agreement to accept an extinction of an obligation, something different from or less than that to which the person agreeing to accept is claiming or entitled.’ ”
American Nat’l Fire Ins. Co. v. Hughes, 624 So.2d 1362, 1364 (Ala.1993).
We first address the issue whether the August 14, 2002, release was enforceable. It is well settled that “[i]n the absence of fraud[4] or ambiguity, a release supported by valuable consideration will be given effect according to the intention of the parties, which is to be judged by the court from what appears within the four corners of the instrument itself, and ordinarily parol evidence is not admissible to impeach or vary its terms.” Johnson v. Asphalt Hot Mix, 565 So.2d 219, 220 (Ala.1990); see also Boggan v. Waste Away Group, Inc., 585 So.2d 1357, 1359 (Ala.1991); Fassina v. Cincinnati Ins. Co., 582 So.2d 1111, 1113 (Ala.1991); Alabama Farm Bureau Ins. Co. v. Hunt, 519 So.2d 480, 481-82 (Ala.1987); Jehle-Slauson Constr. Co. v. Hood-Rich, Architects & Consulting Eng’rs, 435 So.2d 716, 719-20 (Ala.1983); and Skilstaf, Inc. v. Williams, 895 So.2d 916, 918 (Ala.Civ.App.2002).
*470 Hartford contends that the August 14, 2002, release, which was signed by Cochran “individually and on behalf of [Cochran Plastering]” was enforceable. However, Cochran Plastering argues that the August 14, 2002, release was not supported by consideration, and, therefore, that it was not enforceable.
The release indicates that Saad Construction was to pay Cochran Plastering $12,849.27 for the release of its claims.[5] That release was “contingent on payment of the above-listed amount.” The release does not specify the time by which Saad Construction was required to pay the $12,849.27. We conclude that the release was ambiguous with regard to that issue. Therefore, the trial court did not err in considering parol evidence in that instance. See Nix v. Henry C. Beck Co., 572 So.2d 1214, 1217 (Ala.1990) (“If the terms of the release are ambiguous, then the intention of the parties is to be determined as a question of fact, and parol evidence is admissible on that question.”).
Saad Construction insists that the August 6, 2003, check constituted the consideration for the August 14, 2002, release. However, as Cochran Plastering pointed out at the trial, Saad Construction did not pay the $12,849.27 set forth as the consideration for that release at the time the release was executed or within a reasonable time (as defined by industry practice) thereafter. The August 6, 2003, check was sent to Cochran Plastering over five months after Cochran Plastering had filed its complaint in this matter and approximately one year after Cochran had signed the release. The evidence indicated that industry practice allowed Saad Construction approximately 30 days after the signing of the release to pay Cochran Plastering the amount specified in the release, but Saad Construction did not do so. Also, by early December 2002, Saad Construction had in its possession all of the waivers it had demanded that Cochran Plastering provide it; still, Saad Construction did not pay the amount specified in the release.
Further, the evidence does not clearly indicate that by sending the August 6, 2003, check, Saad Construction intended to comply with the terms of the August 14, 2002, release. Although Saad testified that he relied on the August 14, 2002, release in sending the August 6, 2003, check, the letter accompanying that check and the “memo” line on that check did not reference the release.
The evidence supports a conclusion that the August 14, 2002, release was not supported by consideration. Therefore, we must conclude that Hartford has failed to demonstrate that the trial court erred in refusing to enforce the terms of that release.
We note that Hartford argues that under § 8-1-23, Ala.Code 1975, the release was not required to be supported by consideration because it was in writing. That section provides:
“An obligation is extinguished by a release therefrom given to the debtor by the creditor upon a new consideration or in writing with or without new consideration.”
(Emphasis added.) Hartford also cites cases in which our supreme court held that new consideration was not necessary in cases in which there was a written release. See Steward v. Turner, 551 So.2d 374 (Ala.1989); Thrash v. Deason, 435 So.2d 69 (Ala.1983); and Grand Lodge Knights of *471 Pythias of N. America v. Williams, 245 Ala. 220, 16 So.2d 497 (1944). We do not find those cases to be controlling, however. In those cases, some consideration was cited in each of the releases and ivas paid in support of the release. The cases cited by Saad Construction do not stand for the proposition that the consideration specified in a written release does not have to be paid in order for the release to be effective.
In this case, the release stated that Cochran Plastering would waive any potential claims in exchange for payment of $12,849.27. A “release when in writing must be given effect according to its plain terms.” Grand Lodge Knights of Pythias of N. America v. Williams, 245 Ala. at 222, 16 So.2d at 499. According to its “plain terms,” the August 14, 2002, release was effective only if supported by the stated consideration. However, assuming that Saad Construction’s August 6, 2003, check might arguably be deemed to be an attempt at providing consideration for the August 14, 2002, release, that consideration was not timely paid.

Accord and Satisfaction

Hartford also asserts that Saad Construction’s payment of the August 6, 2003, check constituted an accord and satisfaction. Hartford maintains that because Cochran Plastering negotiated the August 6, 2003, check, Cochran Plastering is barred from attempting to avoid the purported accord and satisfaction. Hartford maintains that Cochran Plastering’s attempt in its August 7, 2003, letter to restrict the terms of its acceptance of the August 6, 2003, check was ineffective.
In Wallace v. Wallace, 909 So.2d 827, 831 (Ala.Civ.App.2005), this court noted that the elements of the defense of an accord and satisfaction are “ ‘(1) proper subject matter, (2) competent parties, (3) assent or meeting of the minds, and (4) consideration.’ ” (quoting Austin v. Cox, 492 So.2d 1021, 1022 (Ala.1986)). “The burden of establishing accord and satisfaction is upon the party so pleading.” National Life & Acc. Ins. Co. v. Karasek, 240 Ala. 660, 665, 200 So. 873, 877 (1941).
In Wallace v. Wallace, supra, the parties disputed whether the husband had fully paid a property settlement as dictated by the terms of their divorce judgment. The husband sent a check to the wife, the memo line of which stated “ ‘property settlement — payment in full,’ ” together with a letter indicating that the check was “ ‘for the balance of the property settlement.’ ” Wallace v. Wallace, 909 So.2d at 830 (emphasis omitted). The wife crossed out the words “ ‘in full’ ” on the check’s memo line and negotiated the check; she also sent a letter to the husband disputing that the check constituted the full payment of the balance owed on the property settlement. The wife then filed an action seeking an amount that she maintained was the outstanding balance of the property settlement. The trial court ruled in favor of the husband, concluding that there had been an accord and satisfaction. The wife appealed, and this court affirmed. This court held that the wife’s act of negotiating the check constituted an agreement to the condition upon which the check was offered. Wallace v. Wallace, supra. In explaining its reasoning, this court quoted Ex parte Meztista, 845 So.2d 795 (Ala.2001), a case decided by the Supreme Court of Alabama:
“ ‘[A party’s] placing a restrictive endorsement on the check does not create an issue of fact as to whether an accord and satisfaction had occurred. This court has held that a party in [the wife’s] position has two options: (1) reject the offer of the check as full satisfaction of the disputed claim; or (2) accept the *472 offer of the check as a full satisfaction by cashing or depositing the check. Public Nat’l Life Ins. Co. v. Highsmith, 47 Ala.App. 488, 256 So.2d 912 (Ala.Civ.App.1971). The supreme court has held that a party in [the wife’s] position does not have the option of accepting the offer of the check and placing a restrictive endorsement on it. Boohaker v. Trott, 274 Ala. 12, 16, 145 So.2d 179, 183 (1962) (“The fact that the plaintiff attempted to ‘amend’ the legend on the check [from full payment to partial payment] cannot avail him.”). Such an altering of the terms of the offer does not affect the validity of the accord and satisfaction. Id. According to the law as stated by Highsmith and Boohaker, [the wife’s] endorsement on the check, indicating that she was not accepting the check as full payment ..., is not releT vant in light of the fact that she deposited the check. Her action of depositing the check completed the accord and satisfaction.’ ”
Ex parte Meztista, 845 So.2d at 797 (quoting Hylton v. Meztista, 845 So.2d 792, 795 (Ala.Civ.App.2000) (Crawley, J., dissenting) ) (emphasis omitted).
Hartford argues that because Cochran Plastering negotiated the August 6, 2003, check, the accord and satisfaction was completed and Cochran Plastering is barred from seeking to obtain further recovery. However, the facts of this case are distinguishable from those of Ex parte Meztista, supra, and Wallace v. Wallace, supra. In each of those cases, the memo line on the check and the letter accompanying the check indicated that the check was intended to be a full satisfaction of the parties’ dispute. In this case, however, the memo line of the check Saad Construction sent to Cochran Plastering stated only “Semmes sub August.” The August 6, 2003, letter accompanying the check from Saad Construction to Cochran Plastering, quoted earlier in this opinion, does not indicate that Saad Construction intended for the $12,849.27 payment to be in full satisfaction of all of Cochran Plastering’s claims. Given the facts of this case, we cannot agree with Hartford’s argument that the trial court erred in determining that Cochran Plastering’s acceptance of the August 6, 2003, check did not constitute an accord and satisfaction.

Attorney-Fee Award

Hartford last challenges that part of the trial court’s judgment that awarded Cochran Plastering an attorney fee. An attorney fee may be recovered based on a contract, statute, or special equities. Ex parte Burnham, Klinefelter, Halsey, Jones & Cater, P.C., 674 So.2d 1287, 1290 (Ala.1995) (“ ‘In Alabama and most other jurisdictions, the general rule is that attorney’s fees and expenses of litigation are not recoverable as damages, in [the] absence of a contractual or statutory duty, other than [by] a few recognized ... equity principles.’ ” (quoting Highlands Underwriters Ins. Co. v. Eleganté Inns, Inc., 361 So.2d 1060, 1065-66 (Ala.1978))). In this case, § 39-l-l(b), Ala.Code 1975, provides that in an action against a surety for a company that has entered into a contract with a subdivision of the state, the party suing may seek “in addition to the amount of the claim, a reasonable attorney’s fee based on the result, together with interest on the claim from the date of the notice.”
A significant portion of Hartford’s argument on this issue is dedicated to its continued assertion that an award of an attorney fee was barred by either the release or the doctrine of accord and satisfaction. This court has already addressed and rejected those arguments in this opinion. Hartford also maintains that it should not be liable for any attorney fees incurred *473 after Saad Construction sent its August 6, 2003, check to Cochran Plastering. Given this court’s holding with regard to the issues of release and accord and satisfaction, we conclude that that argument is without merit.
With regard to the remainder of its argument on this issue,[6] Hartford maintains that, assuming the trial court had the authority to make an award of an attorney fee for the entire time this litigation was pending, the fee awarded was excessive. Hartford argues that because the $21,577.50 awarded as an attorney fee is more than the $12,760.98 awarded for the retainage and interest, the attorney-fee award was unreasonable. Hartford cites Peebles v. Miley, 439 So.2d 137 (Ala.1983), which sets forth the following criteria for the determination of the reasonableness of an attorney fee:
“ ‘(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
“ ‘(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
“‘(3) The fee customarily charged in the locality for similar legal services. “ ‘(4) The amount involved and the results obtained.
“ ‘(5) The time limitations imposed by the client or by the circumstances. “ ‘(6) The nature and length of the professional relationship with the client.
“‘(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
“ ‘(8) Whether the fee is fixed or contingent.’
“Model Code of Professional Responsibility, Dr. 2-106(B) (1982).
[[Image here]]
“[ (9) ] Whether a fee is fixed or contingent.
“[ (10) ] The nature and length of a professional relationship.
“[ (11) ] The fee customarily charged in the locality for similar legal services. (This was included in the Faulk [& Co. v. Hobbie Grocery Co., 178 Ala. 254, 59 So. 450 (1912) ] opinion, but not listed in cases which have followed Faulk).
“[ (12) ] The likelihood that a particular employment may preclude other employment.
“[ (13) ] The time limitations imposed by the client or by the circumstances.”
Peebles v. Miley, 439 So.2d 137 at 140-41 (Ala.1983) (footnote omitted).
In Peebles v. Miley, supra, the plaintiffs attorney obtained a full collection of a $196,367 promissory note, and the trial court awarded the attorney a fee of $26,744. In that case, the attorney had agreed to a contingent fee in seeking to recover the amount owed the plaintiff, and he had only expended “8 or 10 hours’ time in the handling of [the] litigation.” Peebles v. Miley, 439 So.2d at 139. However, the court noted that the time spent on the litigation by the attorney was “premium, productive time” that resulted in a full *474 recovery for his client. 439 So.2d at 141. Under the facts of that case, our supreme court determined that the fee awarded was excessive, concluding:
“Having briefly discussed the most current legal principles dealing with reasonable attorney’s fees, we would like to add one caveat. We agree with the admonition of the American Bar Association to the effect that ‘a fee is clearly excessive when after review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.’ We are of the opinion that $26,744.00 is in excess of a reasonable fee. As the amount of the recovery increases, the attorney’s fee should be prudently reduced. Otherwise, we would have the anomalous situation of a routine collection of a promissory note of $2,000,000.00 and an attorney’s fee of $400,000.00. The determination of a reasonable attorney’s fee should not be done in a wooden, inflexible manner, but should be done so that all factors will be given their proper interplay.”
Peebles v. Miley, 439 So.2d at 143.
In this case, Cochran Plastering’s attorney submitted an affidavit and a lengthy detailed description of the fees Cochran Plastering incurred in seeking to recover both the final payment and the retainage. In his affidavit, Cochran Plastering’s attorney alleged that the case was more complicated than the amount in controversy might indicate. Cochran Plastering’s attorney cited the fact that in defending that action, Hartford had alleged that Cochran Plastering: had breached warranties, had failed to complete or repair defective workmanship, had failed to account for sales-tax information, was liable for liquidated damages, and was barred from recovering by a “pay-when-paid” clause. Cochran Plastering’s attorney stated that he prepared to contest all of those allegations at trial, but that most of those defenses asserted by Hartford during the pendency of the litigation were dropped when the parties appeared for the trial. The attorney’s description of the hours expended on the action included drafting pleadings and responsive pleadings, conducting discovery, preparing for and attending an unsuccessful mediation, and conducting research during the pendency of the action as well as for trial.
Thus, the facts of this case are distinguishable from those of Peebles v. Miley, supra, in that the litigation in this case was complex and numerous claims and defenses were raised during the pendency of the litigation. Our supreme court has noted that, generally, a contingent attorney fee should be reduced as the recovery increases. However, the fee at issue in this case was an hourly fee. Further, although the amount in controversy in this action was relatively small, the litigation involved complicated legal issues, many of which were brought into play by Hartford.
“As in most cases, the facts play an importance part in establishing the result to be reached.” Peebles v. Miley, 439 So.2d at 139. Given the facts of this case and the arguments asserted by Hartford in its brief on appeal, we cannot conclude that Hartford has demonstrated that the trial court abused its discretion in reaching its attorney-fee award. Ex parte Edwards, 601 So.2d 82, 85 (Ala.1992) (“The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion.”).
AFFIRMED.
PITTMAN and BRYAN, JJ., concur.
*475 MURDOCK, J., concurs in the rationale in part and concurs in the result, with writing, which CRAWLEY, P.J., joins.

. Cochran testified:
"[RJetainage is normally the general contractor’s procedure for making sure that the subcontractors do not walk out on their work uncompleted. A contract is paid minus [the retainage percentage] and they retain [the retainage percentage], and by law as of my understanding it can be retained up to one year after the project is finished to make sure that your warranty for a one-year warranty is good on the workmanship or craftsmanship of your work.”

. The record is not clear regarding to the date on which the Board paid Saad Construction for completed work that included the work performed by Cochran Plastering. One reference in the record indicates that that payment might have been received as early as August 2002.

. Saad’s testimony established that the litigation between Saad Construction and the Board was in no manner connected with Cochran Plastering or Cochran Plastering's performance under its subcontract with Saad Construction; that litigation appears to focus *468 primarily on the method by which taxes on the supplies for the school were paid.

. Hartford argues that Cochran Plastering did not plead fraud as a basis for seeking to avoid the enforcement of the release, and, therefore, that it could not avoid the release. However, as noted earlier in this opinion, neither Saad Construction nor Hartford pleaded the affirmative defense of a release. Therefore, the evidence supports a determination that Cochran Plastering was not on notice of the possible necessity of asserting a defense to an argument that the release should be enforced.

. We do not address the issue whether the release encompassed only the final payment, as contended by Cochran Plastering, or the final payment and the retainage, as is maintained by Hartford.

. Hartford does not argue that the trial court erred in failing to set forth the reasons for its attorney-fee award. See Pharmacia Corp. v. McGowan, 915 So.2d 549, 553 (Ala.2004) ("a trial court's order regarding an attorney fee must allow for meaningful appellate review by articulating the decisions made, the reasons supporting those decisions, and how it calculated the attorney fee"). Therefore, any argument Hartford might have asserted with regard to that issue is waived. Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982) (an issue not argued in an appellant's brief is waived).